Anding et al. v..Davis et al.

---

## MARTIN ANDING et al. v. JOHN A. DAVIS et al.

1. TRUSTS: MAY BE CREATED BY PAROL.—By the common law, a parol declaration of a trust, both of real and personal estate, is valid.

2. SAME: PAROL TRUSTS IN LAND VALID IN THIS STATE.—The seventh section of the English Statute of Frauds, which prohibits the creation of express trusts in lands except by writing, was not embodied in the legislation of this State previous to the enactment of the Revised Code ; and hence, prior to that date, a parol declaration of a trust in real estate was valid.

3. SAME : SAME.—The admission of parol evidence to show that an absolute deed of real or personal estate, or both, was accepted by the grantee upon condition that he would hold the property thereby conveyed, subject to a trust in favor of the grantor or a third person, is not a violation of the Statute of Frauds of this State, as it existed prior to the adoption of the Revised Code, nor contrary to the rules of evidence on the subject of the admission of parol evidence to contradict, vary, or add to a written agreement.

4. SAME : ABSOLUTE DEED MAY BE SHOWN BY PAROL TO BE A MORTGAGE.—An absolute deed may be shown by parol evidence to have been intended by the parties to have operation only as a mortgage ; and it makes no difference in this respect whether the debt intended to be secured was then contracted by the mortgagor or a pre-existing liability.

5. SAME : CONTRACT TO MAKE A WILL VALID : WILL SO MADE IRREVOCABLE.—A party who receives a deed conveying to him property absolutely, may, in consideration thereof, bind himself by parol to dispose of the property to a designated beneficiary by will; and if he execute a will in pursuance of the agreement, it will be irrevocable ; and if he fail to execute it, it will be a fraudulent violation of his contract, against which equity will give relief to the beneficiary.

6. SAME: SAME: MORTGAGE: CASE IN JUDGMENT.—D. conveyed land and slaves and other personalty to A. absolutely and in fee simple, and delivered possession. A., when he accepted the deed, made a parol agreement that he would hold the property and use it so as to produce profits, and that he would apply the profits to the payment of a debt due by D. to him; and after the debt was paid he would convey the property to the children of D.; and, in furtherance of this agreement, that he would immediately execute and keep on hand a will thus disposing of the property. A. executed a will as he had agreed, but afterwards destroyed it. After the death of A., and the payment of the debt due to him by D., the children of D. filed a bill to recover the property. *Held,* that the trust in favor of the children of D. was valid, and that they were entitled to recover.

7. STATUTE OF LIMITATIONS: JOINT CLAIMS.—Where the right of several complainants is joint, if, at the time their cause of action accrues, one of them be under no disability to sue, the Statute of Limitations will then commence running against all of them; but if, when the cause of action accrues, all of them be under a disability to sue, it will not commence running until disability be removed from all. See *Jordan* v. *McKenzie,* 30 Miss. R. 32; *Masters* v. *Dunn,* Ib. 264.

8. SAME: MORTGAGE: WHEN STATUTES COMMENCE TO RUN.—Where, by the terms of a mortgage, the mortgagee is to take and keep possession of the mortgaged property and apply the rents, issues, and profits to his debt until it is fully satisfied from that source, his possession will not become adverse, nor will the Statute of Limitations commence running against the mortgagor, until the debt secured by the mortgage is paid by the rents, profits, &c.

9. SAME: SAME: JOINT CLAIM: CASE IN JUDGMENT.—When a bill is filed by the heirs of a mortgagor against a mortgagee, seeking to recover the possession of the land conveyed by the mortgage, upon the ground that the mortgage debt has been paid, and seeking also a recovery of the rents and profits, and an account thereof, the claim of the complainants is joint, within the meaning of the rule respecting the application of the Statute of Limitations to joint claims.

10. SAME: SAME: AGREEMENT BY MORTGAGEE TO CONVEY TO A THIRD PERSON. —When, by the terms of a mortgage, the mortgagee is bound to convey the mortgaged property to the children of the mortgagor, upon payment of the mortgage debt, the right to sue for the recovery of the property accrues to the children and not to the mortgagor, upon payment of the debts; and the Statute of Limitations will not, therefore, commence to run against them if, at that time, they be all minors.

11. TRUSTEE: STATUTE OF LIMITATIONS: INFANT CESTUI QUE TRUST NOT PREJUDICED BY LACHES OF TRUSTEES.—The rights of infant *cestuis que trust* will not be prejudiced by the failure of their trustee to sue within the time limited by the statute; and this rule applies where an administrator fails to sue for the recovery of personal property which had been mortgaged by his intestate in his lifetime, and where the right to recover it from the mortgagee accrued after the death of the mortgagor.

12. CHANCERY: PRACTICE: DEMURRER.—If a particular ground of demurrer be assigned to the whole of a bill in equity, it will be overruled, unless the bill in that respect be wholly insufficient for the relief sought.

13. EVIDENCE; PAROL EVIDENCE NOT AFFECTED BY LAPSE OF TIME, UNLESS BARRED.—Where the complainant's right is competent in its inception to be established by parol evidence, it will not be lost by any lapse of time not sufficient to bar it by the Statute of Limitations.

14. CHANCERY: PARTIES: RIGHT OF HEIRS TO SUE WITHOUT ADMINISTRATOR WHEN THERE ARE NO DEBTS.—The heirs of a mortgagor may maintain a bill for the recovery of the personal property conveyed in the mortgage, and for its hire, and for an account, where there is no administrator, and the mortgagor has been dead for so long a period that all the debts due by him must be barred by the Statute of Limitations.

APPEAL from the Chancery Court of Yazoo county.   Hon. E. G. Henry, chancellor.

The case is very fully stated in the opinion of the court.

*Gibbs* and *Wilkinson*, for appellants.

The complainants ask relief upon the grounds:

I. That the absolute deed was coupled with a secret trust in their favor.

II. That the deed was intended to operate as a mortgage.

1. It is charged in the bill that Martin Anding agreed with Davis at the time of the execution of the deed, that he would execute and keep on hand a will, by which he would bequeath all the property conveyed by the deed to Davis's children, and that in pursuance of such an agreement, he did execute and keep on hand such a will, but that he destroyed it before his death.

We hold that such an agreement is void in law.   The first case cited in support of the principle contended for by complainants, is the case of *Fenton* v. *Emblers, Executor of May*, 3 Burrow R. 1278–9. This was an action at law, upon the following facts : May, in lifetime, agreed to pay plaintiff, at the rate of six pounds a year, wages for her services, and also to give her by his will an annuity of sixteen pounds.   May died without complying with his promise, and the plaintiff brought suit.   It was argued that this was a promise of a legacy by an instrument revocable at pleasure, and that it would not do to establish promises of this kind not reduced to writing; but

Anding et al. *v.* Davis et al.

Lord Mansfield held, "there is nothing in the objection about his leaving it by his will, for there is nothing testamentary in a promise to leave at his death," so that it would seem that the will had no bearing on the case; the legal validity of a parol promise to make a will was not established by this case. The real principle established was, that a parol promise to pay money at a party's death, was not within that clause of the Statute of Frauds against agreements not to be performed within the year. The court held such an agreement valid, because it did not appear that it was not to be performed within the year, the time of performance depending on an event which might happen within a year.

The next case is 1 Vernon's R. 48. In this case the promise was, "If I die without issue of my body, I will either give you five hundred pounds or give you my lands."

The reporter does not state in the text whether the promise was or was not in writing. If we assume that the word promise meant a promise not in writing, then the doctrine contended for by complainants might be sustained by this case, but the same case is given in the note as taken from the register's book, wherein it is expressly stated that the promise was by deed. It is nowhere intimated in the text or note, that the promise was not in writing; the Statute of Frauds is not mentioned in either report of the case, and specific performance was decreed upon the original agreement, which was by deed.

1 Vern. R. 296. The trust in this case was decreed to be performed, upon the ground that the fraud and trust were confessed by the answer of the defendant, and the statute not relied on as a defence.

3 Vesey, 402. This case, relied on by the complainants, does not support the principle contended for, but holds the contrary doctrine, and in the note it is added, that the doctrine of mutual wills. being legal, is unknown to the testamentary law of England, citing: 1 Williams on Executors, 9 ; 1 Cowp. R. 268; *Hobson* v. *Blackburn*, 1 Add. 277.

The case of *Dufour et al.* v. *Pereira*, 1 Dick, 419, given also in 1 Williams on Executors, 65, was a case of a mutual will jointly executed by husband and wife; the husband died, the wife proved the will and took the benefit of it, and then made another will.

The question was not on the validity of a parol promise to make a will, but on the power of revocation of a mutual will already jointly executed, and Lord Camden held that it was a contract which could not be rescinded without the consent of both parties. That the widow having proved the mutual will, after her husband's death, and having possessed all his personal estate, and enjoyed the interest thereof during her life, was bound by it, and her will made afterwards, in so far as it conflicted with the mutual will, was void. See 1 Williams on Executors, 65, 66, 67.

The next case is an American authority. *Isard* v. *Middleton*, 1 Dessaus. R. 116. This was a parol agreement to make mutual wills, and Chancellor Matthews held that the agreement was within the statute, and void, because it had not been reduced to writing, and signed by the party to be charged.

*Rivers* v. *Executors of Rivers*, 3 Dessaus. R. 189. This was a case of written agreement to bequeath to the wife a competent and sufficient maintenance during life. The Statute of Frauds had nothing to do with it; the only question was in reforming the will, so as to give to the wife a competent and sufficient maintenance, according to the terms of the written agreement, it being alleged that the maintenance bequeathed by the will was not competent and sufficient.

The case of *McClanahan* v. *McClanahan*, 6 Humphreys R. 99, is also relied upon; but the court will perceive, on looking into this case, that the relief was granted only as to the land where the trust was admitted in the answer, and the statute not set up as a defence, as to the personalty; the relief was refused because the parol trust was not admitted, and parol evidence could not be heard to establish it. This is like the case in 1 Vern. R. 296.

It will be seen from the examination, that none of the cases sustain the principle that a parol promise to make a will is binding in law or equity.

But the attempt in the bill is not an attempt to set up merely a parol promise for that purpose, apart from any other contract or agreement; but it is an attempt to engraft such a promise on an absolute deed, and raise a trust by parol on a written instrument. This, we say, cannot be done except in case of fraud and mistake, and the position is supported by the following authorities. *Irnham* v.

*Child,* 1 Brown C. C. 92; *Bartlett* v. *Pickersgill,* 1 Ed. 515; *Leman* v. *Whitley,* 4 Russ. 423; *Dickerson* v. *Dickerson,* 2 Murp. 279; 1 Carr. Law R. 262; *Steere* v. *Steere,* 5 John. Ch. R. 1; *Dean* v. *Dean,* 6 Conn. R. 285; *Hutchinson* v. *Tindall,* 2 Green. Ch. R. 357; *Starr* v. *Starr,* 1 Hamm. 321; *Moran* v. *Hays,* 1 John. Ch. R. 343; *Philbrooke* v. *Delano,* 29 Maine R. 410; *Wollam* v. *Hearn,* 2 White & Tudor Lead. Cas. in Eq. 540; *Lloyd* v. *Ingles,* 1 Dessaus. R. 333; *Harris* v. *Barnett,* 3 Gratt. R. 339; 4 Phillips on Ev. 1434, 1442 (in notes). And where it is to be gathered from the face of the bill that the alleged trust is only in parol, the objection may be taken advantage of by demurrer. *Walker* v. *Locke,* 5 Cushing R. 91; *Wood* v. *Midgly,* 23 Law Jour. Ch. 553.

But it is charged in the bill that Anding did execute and keep on hand a will. This is not a sufficient writing to take the case out of the statute. *Johnston* v. *Brooks,* 2 George R. 17.

It is also charged that Anding performed his agreement in part by paying certain debts, and settling certain negroes on the children of Davis, who are complainants in the bill. In this State, it is settled that part performance will not take a case out of the statute. *Box* v. *Stanford,* 13 S. & M. R. 94; *Beaman* v. *Buck,* 9 Ib. 210; *Catlett et al.* v. *Bacon,* 4 George R. 282.

II. The complainants seek to recover, upon the ground that the deed was intended to operate as a mortgage.

The court must take into consideration the whole case made by the bill. The demurrer necessarily admits the truth of the facts stated in the bill, so far as they are relevant and well pleaded; but it does not admit the conclusions of law drawn therefrom, although they are also alleged in the bill. Story's Eq. Pl. 354. Now the facts set forth show an attempt to create, not a mortgage, but a settlement. It is charged that it was expressly agreed, that after the payment of Anding's debt he should convey the whole property to Davis's children. This the demurrer admits; but the additional charge in the bill, that this agreement amounted to a mortgage, being a legal conclusion is not admitted by the demurrer. According to their own showing, the complainants can only recover, if at all, under the agreement or settlement, as purchasers; for Davis, the ancestor, had parted with his whole estate legal and equitable: the legal estate to Anding, and the equitable estate to his children;

and they cannot recover by right of representation under their ancestor for that reason; and if by mistake of law the parties entered into a void agreement, they cannot be relieved against it. *Hunt* v. *Rousmanier*, 1 Peters R. 15; *Bank United States* v. *Daniel*, 12 Ib. 32, 55; 1 Story's Eq. 116.

But to enable complainants to recover upon the supposition that the deed was intended as a mortgage, they must recover, not as purchasers, but as heirs and distributees of their father's estate, and they occupy the position of their ancestor, and are clothed with his rights, and no more. Now, if Bradford Davis was living, and was the complainant in this bill, we think it clear he could not recover, because, by the face of the bill, he had parted with his entire estate, and the present complainants, standing in his shoes, must for that reason fail.

But suppose the deed was intended to operate as a mortgage, yet complainant must show why it was not so executed. See authorities above cited. *Jones* v. *Statham*, 3 Atkins R. 388; *Mason* v. *Armitage*, 13 Vesey, 25; *Rich* v. *Jackson*, 4 Brown, C. C. 514; 6 Vesey, 334; *Townsend* v. *Stargrove*, 6 Ib. 328; *Hunt* v. *Rousmanier*, 8 Wheaton, 174, 211; *Brainerd* v. *Brainerd*, 15 Conn. R. 575; *Fishell* v. *Bell*, 1 Clark, 37. Parol evidence is admitted in equity, to prove that a deed of conveyance made absolute by mistake or accident, was intended only as a mortgage. 3 Greenl. Ev. 369, § 364, and authorities cited in note; *McDonald* v. *McLeod*, 1 Iredell Eq. R. 221; *Lewis* v. *Owen*, Ib. 291. And such mistake must be of fact, and not of law; and no such mistake or accident is shown by the bill.

Although it is no doubt competent to raise a mortgage, by showing that an absolute deed was intended as a security for the repayment of an actual loan of money; yet we doubt whether it is competent to do so, by proving the consideration to be a pre-existing debt, unless you also show, that by fraud, accident, or mistake in fact, the parties were prevented from reducing their agreement to writing. See on this point, *Craft* v. *Ballard*, S. & M. Ch. R. 366; *Prewett* v. *Dobbs*, 13 S. & M. 431; *Vasser* v. *Vasser*, 23 Miss. 378; *Watson* v. *Dickens*, 12 S. & M. 614. The authorities in the other States are conflicting, and are collected in 1 Hilliard on Mort. 57,

in notes. See also *Morris v. Nixon*, 1 How. S. C. R. 127, per Wayne J.; *Taylor* v. *Luther*, 2 Sumner R. 228.

If the court should be of opinion that the parol agreement was valid, then the statute commenced running from the time of adverse possession by Anding's administrators in February, 1848. Angell on Limitations, 171, § 9. And one of the distributees being then of age, it commenced running against all as to the personal estate. *Jordon* v. *McKinzie*, 1 Geo. 32.

In relation to the real estate, it is the well-settled rule, that if the mortgagee is in possession for twenty years, the mortgagor cannot redeem, unless he can bring himself within the provisos to the act. Angell on Lim. 494. And possession for that length of time by a mortgagee will *prima facie* bar a right of redemption; and it lies on the mortgagor to show that such length of possession ought not to produce that effect. "The *onus* lies on the mortgagor to show that fact, in order to defeat the effect of the possession." Ib. 498, citing *Barron* v. *Martin*, Cooper Eq. R. 189; S. C. 19 Vesey R. 326. And no case can be found in which redemption has been allowed after twenty years' possession, on parol evidence. Angell on Lim. 499. And under our statute, parol evidence is not admissible. Code, 401, Art. 21. This court held, in an early case, *Iler Routh's Heirs*, 3 How. 276, that courts of equity apply the statute by analogy to the courts of law; and accordingly in that case dismissed the bill, because the defendant was in possession more than twenty years before the filing of the bill; and from this principle they have never departed.

But it is sought to take this out of the operation of the general rule, not by bringing it within the proviso to the act, but by showing it to be an exception to the rule in courts of equity. It is true that in the case of Welsh mortgages (where the profits keep down the interest), it has been held to be an exception, and the statute does not run; but this court does not recognize exceptions to the statute not within the proviso, nor seek to engraft other exceptions upon the act. *Smith* v. *Westmoreland*, 12 S. & M. 663; *Goff* v. *Robins*, 4 George, 153; *Mandeville* v. *Lane*, 28 Miss. R. 312; *Young* v. *Cook*, 1 George R. 320; *Nevitt* v. *Bacon*, 3 George, 212; *Ingraham & Read* v. *Bowie*, 4 George R. 17. But this is not the case of a Welsh mortgage, but a mortgage in the nature of a Welsh

mortgage, where the mortgagee holds until, out of the rents and profits, he is paid his debt; and he is likened to the case of a tenant by *elegit ;* and the estate ceases upon payment of the debt, and the mortgagor might maintain equitment unless the mortgagee had remained in possession twenty years after such payment. 1 Hilliard on Mortgages, 3, in notes. By our law, ten years after payment would be sufficient. Under a Welsh mortgage, no time is specified for the payment of the debt; the profits do not go to its extinguishment ; there can be no forfeiture; and hence, by the English rule, the statute did not run ; but the same reason does not apply to this case, where it is alleged that the debt was paid with four crops, and the statute runs from that time. We think, therefore, we are justified in asserting,

First. That it is not competent to engraft a parol agreement express upon an absolute deed.

Secondly. It is not competent to raise a mortgage by proving the consideration to be the security for a pre-existing debt, when the deed is absolute, unless you show a legal reason why it was not executed in proper form of a mortgage ; and

Thirdly. This case is barred by the Statute of Limitations.

To hold otherwise, and to allow the parties after the lapse of more than twenty years, and after the death of all parties to the original absolute deed, to come forward at this late day, and upon parol proof alone, change the title to an estate, would be setting a precedent which might upset half the titles in the State. The rule which should govern in all cases of this character has been wisely incorporated into the statutory law of this State. Code, 359, Art. 5. We believe this article is declaratory merely, and that this court will so hold.

*R. S. Holt,* for appellees.

The causes of demurrer assigned in the court below present the only questions arising upon the record in this court, and we proceed to consider them, though not in the precise order in which they are stated in the demurrer.

I. That the agreement between Davis and Anding as stated in the bill, is void in law.

The ground of this alleged invalidity is not stated, but it was in

argument in the court below insisted, as it will doubtless be here, that it was void :

1. Because not reduced to writing.

2. Because not to be performed within a year.

In answer to the first of the positions, we say,

1. That a parol agreement, that a deed absolute on its face, shall operate as a mere mortgage, is valid in equity, may be proved by parol evidence, and when proven converts the instrument into a mere mortgage. 12 S. & M. R. 614; 13 Ib. 440; 23 Miss. R. 380; 26 Miss. R. 186.

This may be, upon these decisions, regarded as the settled law in this State.

If the deed is by this agreement converted into a mortgage, complainants are entitled to a decree, as we shall elsewhere show, as heirs and distributees of the estate of Bradford Davis, the mortgagor.

2. But if that portion of the agreement which converts the absolute deed into a mortgage be valid, why is not that other portion which provides for the conveyance of the property, after payment of the mortgage debt, to the children of the mortgagor instead of the mortgagor himself ? The implication of law, in the absence of any express provision in a mortgage deed, certainly is, that on payment of the debt the mortgaged property shall return or be conveyed to the mortgagor. But it is believed that a provision in a mortgage, that the property shall be conveyed to another, after the satisfaction of the mortgage-debts, is consistent with the character of the instrument as a mortgage, and constitutes part of it as one entire instrument.

If I am right in this, the entire agreement is valid as a defeasance to the deed though resting in parol, and complainants are entitled to claim the benefit of the provision for the conveyance of the property to them.

3. But we insist, that the agreement for the reconveyance of the property to complainants, is valid as a parol declaration of a trust, even though it cannot stand as part of the defeasance of the mortgagee. We have no statute requiring a trust to be created in writing.

Such a trust is valid at common law, certainly as to personal property. Hill on Trustees, 86, 88, 89.

The English Statute of Frauds only required trusts in land to be created in writing. Hill on Trust. 86, 88.

In this State, a parol trust even in land has been sustained. 31 Miss. R. 428, 429.

It is not embraced by the Statute of Frauds.

4. It is, however, objected that the rules of evidence do not permit a parol trust to be proven in opposition to the absolute terms of the deed.

This position is more plausible than sound. The effort is not so much to contradict by parol the terms of the deed, as to prove by parol an agreement *dehors* the deed, and founded on it as a consideration. Complainants admit the execution of the deed; that it vested the title in Anding, and that it is true in its terms and provisions. They say, however, that in consideration of its execution, and of the title with which it invested Anding, he made a contract, bound himself by an agreement, outside of the deed, and which formed no necessary or proper part of that instrument, as a mere vehicle for the transmission of title.

5. It is further urged that this rule of evidence has been constantly relaxed or disregarded in equity when necessary to prevent the fraudulent use of an absolute deed, where it was not intended by the parties to operate according to its terms. 17 Pet. R. 109; 1 How. U. S. R. 126; 1 McClean's R. 183; 31 Miss. R. 428, 429; 2 Yerger, 346–349.

The principle upon which parol proof is admitted in these cases fully embraces this case.

6. But if the agreement of Anding to convey to complainants during his life, be not sustainable either because it was a parol creation of a trust, in conflict with the terms of the deed, or because not susceptible of parol proof in conflict with the deed, his agreement to bequeath the property to complainants by will, and his execution of such a will, present quite other questions.

Such an agreement is valid in law and in equity. 3 Dessaussure, 194; 1 Dessaussure, 116; 3 Burrow's R. 1278, 1279; 3 Vesey, 402, note 1; 1 Vern. 48, note 1; 1 William's on Ex. ch. 3, p. 71.

The will, executed as alleged in the bill and admitted by the demurrer, was in equity a contract in writing, and which complainants are entitled to have enforced. 1 Lomax on Executors, 41; 1 Williams on Executors, ch. 3, p. 71.

As a will such an instrument is revocable, because a will is, by the first law of its nature, ambulatory: but the authorities cited, show that when executed in compliance with a valid agreement, it becomes, in equity, a contract, and is set up, sustained, and enforced, precisely as other contracts.

2. To the second objection to the agreement, that it was not to be performed within a year, we answer:

1. The execution of the will was not either expressly or impliedly deferred for a year.

2. Under this clause of the Statute of Frauds, it must appear from the terms of the contract itself, that its performance was necessarily postponed more than a year. 31 Miss. R. 429; 19 Pick. R. 365, 366, 367; 3 Burr. R. 1278; 22 Pick. R. 99, 100; 10 John. R. 244; Chit. on Cont. 68.

The terms of this agreement, as stated in the bill, do not meet the requirements of this rule. The time of payment from the crops, was uncertain, and Davis might, if able, have paid the debt to Anding at any time.

3. The agreement was executed, as to the clause, in relation to the will; and this took it, as to this clause, out of the operation of the statute. Chit. on Cont. 68, 69, note 1.

4. That complainants cannot insist on the benefit of this or any clause in the Statute of Frauds, without first offering to return the property received under the agreement. 11 Eng. Com. L. R. 104, 105; 3 Hill R. 128.

II. It is insisted that complainants are barred under one or more of several Statutes of Limitation. We answer:

1. That John A. Davis, the eldest of complainants, having been born, as alleged, on the second day of February, 1825, did not attain his majority until the second day of February, 1846. Until this date, therefore, all of complainants were under disability.

According to the allegations of the bill, the claim of Anding was satisfied from the proceeds of crops, at least as early as 1844; and whether they claim to recover the property as heirs of Bradford Davis, and on the ground of the deed to Anding having been in equity a mortgage; or whether they claim as beneficiaries in the trust created by the parol agreement, their right of action accrued to them at that time, and upon the occurrence of that event, and

not before; and until there was a complete right of action, the Statute of Limitations did not commence to run. Ang. on Lim. 41; 2 Hilliard on Mort. 21; 2 Atk. 359.

Complainants were therefore all minors, when their right to sue arose ; and, according to an authoritative interpretation of the Statute of Limitations, they were allowed until a period after the youngest had attained to twenty-one years of age, to sue. 30 Miss. R. 264.

Olive D. Davis, the youngest of complainants, having been born in January, 1849, was a minor at the commencement of the suit ; and consequently none of complainants can be barred.

The statute, it is true, commenced to run from the time the right of action accrued, as if complainants had been then of full age ; but the act gives them the additional time in which to sue on account of their infancy. 4 Yerger, 258, 264; 2 Meigs's Dig. 754; Hutch. Code, 825; 4 Yerger, 231.

2. It will be insisted, however, that the right of action asserted by complainants, as heirs of Bradford Davis, accrued to their ancestor in his lifetime, because he could, at any time, have paid the debt and filed his bill to redeem.

We answer to this, that by the terms of the agreement, the payment of the debt was deferred until it should be satisfied from the crops, which did not occur until 1844, or three years after the death of Davis; until this time there was no forfeiture of the mortgage, and no right to redeem.

Under an ordinary mortgagee, where the mortgage is in possession, it has been held that the statute runs from the maturity of the debt or forfeiture of the mortgage, unless the mortgagee acknowledged that he held subject to a continuing right of redemption. But the case here is far different.

The possession of the mortgagee is for the purpose of obtaining satisfaction from the profits of the estate, is consistent with and subservient to the rights and claim of the mortgagor, and is not in denial of or adverse to those rights. Until full payment of the debt, the possession of the mortgagee was under parol agreement of defeasance, and in legal contemplation the possession of the mortgagor. 2 Hilliard on Mort. 21; 2 Atk. R. 359.

3. The statute giving to complainants until after the majority of

the youngest to sue, we insist that it was not in the power of Anding, in his lifetime, by any act of his, to shorten the period of limitation thus fixed by law. He held the property subject to the right of complainants to sue within the time specified.

He died in 1848, and by that act devolved his estate upon his heirs who are the defendants. Can they claim that the statute, as to them, commenced to run from that period when one of complainants had attained the age of twenty-one years?

We conceive not. It is a principle of universal acceptance, that the heir and personal representative take the estate of the ancestor, or intestate, subject to all the rights and claims against it at the death of the deceased. They but succeed to the rights of the deceased, and take the estate as he held it *cum onere.* 2 B. Monroe, 438; 4 Har. & McHenry, 167, 198.

4. It will, however, be specially insisted, that the suit is barred by the limitations of four years upon suits against executors and administrators. Hutch. Code, 831. We answer:

1. That less than four years occurred between the grant of letters testamentary to defendants and their surrender.

The statute contemplates an action against an executor or administrator in his representative capacity, and gives the entire period of four years for its commencement. If, as in this, the letters testamentary or of administration are revoked or surrendered, the running of the statute must be arrested. The party entitled to sue is in no default up to the moment of such surrender or revocation, and after that there is no executor or administrator to be sued. This is a special limitation of an action against persons sustaining a particular character, and is not, I think, embraced by the rule that when the general Statute of Limitations commences to run, it continues to do so even after the death of the party liable to be sued.

2. This statute manifestly, we think, applies only to money demands, and not to claims for specific property. The policy of the act was to require the presentation and enforcement of moneyed demands against estates within the limited time; but claims of title to specific personal property were sufficiently provided for under the general Statute of Limitations.

3. If this statute was intended to protect the title to personal

property, it could have been designed to embrace only such property as came to the hands of the executors or administrators for administration, and constituted assets in their hands.

The property in controversy was strictly trust property, held by their intestate as such, and was not in law assets in their hands. *Maury's Adm'r.* v. *Mason's Adm'r.* 8 Port. R. 212.

In such case, the claim of the beneficiaries to the trust property assimilates itself very nearly to that of distributees of the estate to their share thereof.

4. At the death of Anding in 1848, there was no administrator of the estate of Davis, and consequently no one to sue within the limited period of four years. Richards, the administrator of Davis, had before resigned, and has had no successor, and consequently the estate of Davis had no legal representative. Under this, as under the general Statute of Limitations, the limitation could not commence until there was in being a person in law entitled to sue.

In a case identical in character, under the general statute, this court held this doctrine, and decided, that as there was for this reason no bar at law against a claim by the estate, there was none in equity against the distributees of the estate. 29 Miss. 65, 66.

5. We insist, that if the trust in favor of complainants was valid, the statute would not bar it, even apart from their disability, until the trust was denied, and they had notice of such denial. The bill neither alleges such denial nor notice. 8 Port. R. 211.

6. Viewing it as a claim to recover mortgage property, the same rule applies. 34 Miss. R. 457 ; 10 Yerger, 376.

7. Viewing the bill as one to redeem under a Welsh mortgage, as this certainly was, the authorities show that it constitutes an exception to the general Statute of Limitations, and that no length of time will bar it. Ang. on Lim. 500 ; 1 Vern. R. 418 ; 1 Greenl. Cruise, 84, 154–6 ; 1 John. Ch. R. 589 ; 2 Atkins's R. 363 ; 2 Hilliard on Mort. 21.

Some of these authorities intimate that the statute may possibly run against the right to redeem a Welsh mortgage, but certainly not until the full satisfaction of the debt. If this view of the subject be the correct one, it is a perfect answer to the position of defendants, that the statute commenced running when Anding took possession, and in the lifetime of Davis.

8. Viewing the bill as filed to enforce the will of Anding in favor of complainants, operating in equity as a contract, no Statute of Limitations runs against it.

It could only operate as a will at law, after probate, and at law the statute would only run against the rights acquired under it from the time of its probate. As the claim asserted under it, as a contract, is one of exclusively equitable cognizance, it could be barred only, if at all, by analogy to law. But as the will was never proved, and the limitation at law never commenced to run, there is no analogy upon which to apply the statute in equity. The analogy is the other way. 29 Miss. R. 66.

9. It is claimed that the general Statute of Limitations operated against Richards as administrator of Davis, and barred him, and that he being barred, complainants, as far as they claim as heirs of Davis, are also barred. This of course applies only to their claim to the personalty.

The letters of Richards were revoked on the 26th of February, 1845, when all of complainants were yet minors; and it has been repeatedly and directly held by this court, that the minor distributees of an estate were not barred of their claim to the personal property of the estate, though the bar was complete as against the administrator. 23 Miss. R. 140; 31 Ib. 304.

We think, therefore, that complainants are, under no aspect of the case, barred by the Statute of Limitations.

III. It is next insisted, by the demurrer, that the personal representatives of Bradford Davis are necessary parties, if the bill be viewed as one to redeem mortgaged property.

The bill alleges that there is no administrator of that estate, and has been none since 1845; that there are no subsisting debts of that estate, and that the mortgage debt has long been fully paid. Under such circumstances, the right of the distributees to maintain the suit without administering has been settled in this court. 29 Miss. 65.

IV. It is next insisted that the bill is multifarious.

There is plainly nothing in the bill to justify this charge. It sets up, it is true, in title to the property sued for, derived in one of three ways in the alternative. But this does not render it multifarious.

The claim to the property and its products is a unit.

V. It may be further said, in conclusion, that as the demurrer is to the whole bill, it was upon familiar principles correctly sustained, if it was good to the whole claim asserted in the bill. Story Eq. Pl. 442–3.

HANDY, J., delivered the opinion of the court.

This is an appeal from a decree of the Chancery Court of Yazoo county, overruling a demurrer to a bill filed by the appellees.

The bill states in substance that on the 28th March, 1839, Bradford Davis, the father of the complainants, owned and possessed in Yazoo county a large quantity of land on which he resided, sixty-six slaves, with horses, mules, and other stock, and farming utensils; that prior to that time, Davis had purchased of one Martin Anding, the father of one of the defendants, and the husband of the other, certain lands, slaves, and other property, for which he was indebted to him in the sum of $27,000, and that said Anding was then responsible as surety for said Davis for about $6000, which he had then paid or intended to pay; and that after said sale by Anding to Davis, the former was employed by the latter as his overseer on the plantation up to the 28th March, 1839; that on that day, for the purpose of securing the said indebtedness to Anding and to reimburse him the sum of $6000, paid as surety for Davis, a deed was executed by Davis reciting a consideration of $33,000 as paid, conveying absolutely in terms to Anding the whole of the lands, slaves, stock, farming utensils, household furniture, and other personal property then owned by him; which deed is made an exhibit; that the consideration expressed in the deed as paid was not in fact paid, but was made up of the two sums above-mentioned, and the deed " was made to operate, and was by said Davis and Anding intended to operate, by way of mortgage alone, to secure to Anding the payment of said sums;" that at the time of the execution of the deed, it was expressly agreed between the parties that Anding should take possession of the whole property conveyed, and employ it in planting to the best advantage, and from the proceeds pay all the expenses of the business, and a reasonable compensation to himself for his services, and pay to Davis from time to time sums necessary for his personal and family expenses, and should appro-

priate the balance of the proceeds to the payment of the aforesaid sums of money and interest; and that, after Anding should be thus fully paid and indemnified, he should convey and deliver the whole of said property and its increase or equivalent to the children of Davis; that, as this agreement rested in parol only, Anding agreed that, in furtherance of it, he would prepare and keep at all times on hand a will, in which he would devise and bequeath to the children of Davis the whole of said property, after he should be paid and reimbursed as aforesaid; that Anding agreed to hold the property, and did take and hold it merely as trustee for the purpose of this agreement; that the parties were intimate and attached friends, and Davis had unbounded confidence in Anding's good faith, and they supposed that four or five years would be sufficient to satisfy the claims of Anding; and for these reasons, that the agreement was not reduced to writing.

The bill further states, that the consideration expressed in the deed was not equal at the time, to the value of the property, which was then worth from sixty to eighty thousand dollars; that Davis's wife did not relinquish her dower in the property, because she did not approve of the unlimited confidence reposed in Anding by the deed; that, after the execution of the deed and the making of the agreement, Anding took charge of the property under the agreement, as trustee to carry the agreement into effect, Davis remaining on the place with his family, and occupying the mansion-house as before the execution of the deed, until the death of his wife, a few weeks thereafter; that he afterwards removed to Texas, taking with him his two eldest children, and placing the others, then very young, with their uncle in this State, and that in September, 1840, he came to his death by assassination in Texas; that Anding carried on the business according to the agreement between him and Davis, until his death in February, 1848, making each year from said property from three hundred to five hundred bales of cotton; and during his life, he admitted the terms of the agreement with Davis under which he held the property as trustee for Davis's children, and promised to comply with the agreement, and that he did in part comply with it, and partially execute the trust; that he applied the proceeds of the crops to the payment of his own claims, which the bill states were fully satisfied by the crops of the years 1839,

1840, and 1841; and paid some small sums to meet the wants of the children of Davis left in this State; and after Davis's death, that he secured and settled to the use of his children, nineteen slaves, in execution of the agreement; and, in further compliance with said agreement, that he executed, and for a time kept on hand, a will, by which he bequeathed the whole of the property conveyed to him to the children of Davis, as was agreed; that the complainants are advised and suppose that this will was destroyed by Anding before his death, as they have never been informed of its existence since his death by the defendants, who have charge of his papers; they call upon the defendants to state if he left such a will, and to produce it; and if it was made by him and destroyed, they claim the benefit of it.

The bill further states, that the defendants, the son and widow of Anding, administered on his estate in February, 1848, and as administrators took possession of all the property conveyed to him as aforesaid, with its increase, except the slaves secured to the children by him, as above stated, and carried on the plantation, received the proceeds of the crops, and accounted for them as administrators until the 24th June, 1851, when they made a final settlement, and distributed and delivered over the whole of said property, its increase and proceeds, to the defendants, the sole heirs and distributees of his estate, who have since held possession of all of said property and its increase, and have since that time employed the property in planting, and have made from 400 to 600 bales of cotton per year, and have received the proceeds thereof; that on the 23d November, 1841, Joab R. Richards took out letters of administration on the estate of Davis in Yazoo county, and surrendered the same on the 26th February, 1845, since which time no other administration has been granted, and that there are no subsisting debts against his estate; that Davis left the complainants his only children, who were born at the times stated as follows: John A. Davis, born 2d February, 1825; Phebe A. Davis, born January 4th, 1827; Sarah Jane Davis, born 1st October, 1828; Bradford Davis, born 21st January, 1831; Mississippi S. Davis, born 21st April, 1833; James J. Davis, born April 9th, 1836; Olive D. Davis, born 15th January, 1839.

They state, as a reason for the delay in instituting the suit that

the two eldest of the males were left, on the death of their father, children among strangers in Texas, where they have remained ever since ; that until a very late period, they were all ignorant of their rights as stated, the true consideration of the deed, and the agreement in relation to the property.

The prayer is for discovery, and for a decree for the property and its increase and profits, and for an account, &c.

To this bill, the defendants demurred, assigning the following grounds of demurrer : 1st. The Statute of Limitations of twenty years ; 2d. The Statute of Limitations of ten years ; 3d. The Statute of Limitations of six years ; 4th. The Statute of Limitations of seven years ; 5th. The Statute of Limitations of three years ; 6th. That the agreement stated in the bill is void in law ; 7th. The want of proper parties to the bill ; 8th. The Statute of Limitations of four years from the grant of letters of administration on Anding's estate ; 9th. That the bill is multifarious, and in other respects insufficient.

The first question presented for consideration in behalf of the appellants is, whether the facts stated in the bill are sufficient in law to entitle the complainants to relief upon the agreement set up.

The complainants' claim, as shown by the bill, rests upon two grounds ; 1st. That the deed to Anding was made upon an agreement to reconvey ; 2d. That it was intended as a security for money due by Davis ; and is, therefore, in equity a mortgage. In both aspects, it is contended that the claim is insufficient in law as set forth, and not maintainable ; and in support of that view, several objections are urged against it.

In the first place, it is insisted that the agreement to reconvey, being in parol, is void by virtue of the Statute of Frauds.

As to the personalty, there can be no doubt but that the trust is valid, though resting in parol. Before the Statute of Frauds, in England, a parol declaration of trust, either of real or personal estate, was valid ; and as the statute there only applied to trusts of real estate, the validity of trusts of personalty has never been questioned. Hill on Trustees, 56. In this State, the seventh section of the English statute in relation to declarations of trust, had not been adopted as a part of our Statute of Frauds in force at the date of the transaction here involved, though it has recently been

in substance incorporated in the statute by the Revised Code.    The same rule was, therefore, applicable both to real and personal estate, and parol trusts of real estate have been held valid.    *Soggins* v. *Heard*, 31 Miss. 426.    Hence, so far as the objection to the validity of the trust set up in this bill rests upon the statute, it is untenable.

It is, however, urged that this would be to engraft an agreement upon the deed not contained in it, and in contradiction of its terms; which it is said cannot be done by setting up a parol agreement. But it is now well settled that, in equity, and as between the parties, it is competent to show an agreement in parol, not to contradict the deed, but to bind the party to a trust which he undertook in accepting the deed.    It is not necessarily a contradiction of the deed. The estate vests according to its terms; but the grantee agrees to hold the estate conveyed subject to a trust created by an agreement *dehors* the deed, which operates in equity as a defeasance for the benefit of the beneficiaries of the grantor.    This is not in contravention of any rule of law, when there is nothing in our statutes prohibiting such declarations of trust in parol; and hence it has been properly held in this court and is now settled law, that a deed absolute on its face, will be held in equity a mortgage, whenever it appears that it was intended as a security for the payment of money. *Vasser* v. *Vasser et al.* 23 Miss. 378; *Prewett* v. *Dobbs*, 13 S. & M. 431; *Soggins* v. *Heard, supra.*

But, independently of these considerations, these objections are obviated by the facts stated in this bill.    The bill alleges, in effect, that it was agreed between the parties, that Anding should *execute* and *keep on hand a will*, reconveying the property to the complainants on the payment of the money intended to be secured by the deed; that this agreement was complied with by him, but that either he destroyed the will in his lifetime, or that it has never been produced by his representatives, if in existence.    If these allegations be true,—as upon demurrer they must be taken to be,— there was a compliance with the agreement on his part *in writing;* and the destruction of the instrument by him, or its suppression by his representatives, is such a fraud as would entitle the complainants to relief, on that ground, in a court of equity.    He was bound, as a matter of contract, to execute and keep a will reconveying the

Anding et el. *v.* Davis et al.

property; from which he and his representatives cannot claim to be absolved on the ground that it was to be done by will, which is generally revocable. For the contract was that he should perform his agreement in that manner. Upon that consideration in part and for that purpose, he had received the deed, and the agreement had the force of a contract; and the will, when executed, was, as to this property, irrevocable. If not executed, he was thereby bound for the consequences of a violation of the contract, for which he had received a valuable consideration. In this respect, the case is fully within the principle of *Fenton* v. *Emblers*, 3 Burr. 1278; and *Dufour* v. *Pereira*, 1 Dick. 419.

Nor is this equitable right secured to the complainants, impaired by the fact, that the will—the instrument of reconveyance and the evidence of the agreement—was to remain in the possession of Anding. For after its execution, as agreed on, he had no right to destroy it, without a violation of his agreement. His retention of it was a part of the agreement which he had undertaken, and which he was bound to observe. If he executed, and afterwards destroyed it, then it was a violation of his agreement. But if he failed to execute the will, that was also a violation of his agreement and a fraud upon the grantor and his children, which, according to all the authorities, will entitle them to the benefit of the agreement in equity, against him and his representatives, as though he had kept it in good faith. Hill on Trustees, 60, 166; *Jonham* v. *Child*, 1 Bro. Ch. Rep. 92 (1 Amer. edit. by Perkins), and numerous cases cited in note b.

According to the statements of the bill, then, he was guilty of a fraud upon the agreement, either in failing to perform his contract to execute and keep on hand a will reconveying the property; or the will was executed according to the agreement, and has been since destroyed or suppressed by his representatives; and this clearly presents a case which in equity entitles the complainants to the benefit of the agreement, as though it had been carried out in due form.

In the second aspect of the bill, it alleges that the deed was executed as a security for the payment of the debts specified, and was intended to operate in that respect as a mortgage. Not only is this distinctly alleged, but the circumstances of its execution

tending to show that such was its character, are stated; that the parties were intimate and confidential friends; that the property conveyed greatly exceeded in value the consideration stated in the deed; that Davis continued to reside on the place for some time and until the death of his wife; and that the deed embraced all the property, real and personal, even the household furniture, of the grantor. If it was necessary to show why the deed was intended as a security for the debt, these circumstances are abundantly sufficient to show it, and to explain the purpose of the parties, especially when they are viewed in connection with the agreement between them as stated in the bill. The demurrer admits the allegations of the bill and the statement of the circumstances and reasons for the execution of the deed in its absolute form; and this brings the case fully within the rule held by this court as above stated, allowing a deed absolute on its face to be shown to have been intended merely as a security for a debt, and to have the effect of a mortgage in equity.

It is further objected that the deed cannot have the effect of a mortgage, because, according to the statements of the bill, it was intended to secure pre-existing debts. The question of a present consideration or a pre-existing debt, has been considered as having weight upon the question of the validity of mortgages and other securities, as they were affected by the equities of other persons than the parties to the conveyance. But certainly, as between the parties, it cannot affect the validity of a mortgage, or of an instrument having the effect in law of a mortgage, that it was made for the purpose of securing a pre-existing debt.

We are, therefore, of opinion that this ground of demurrer was properly overruled.

The next ground of error insisted upon is, that the relief sought in the bill is barred by the statutes of limitations relied on in the demurrer, and that the demurrer should have been, therefore, sustained. In support of this view, several positions are taken which deserve consideration.

First. It is contended that the statute commenced running from the time of the adverse possession of the administrators of Anding, in February, 1848; and as one of the children of Davis was then of full age, that the statute then commenced running as to all of

them, as to the personal estate, under the rule declared in *Jordan* v. *McKinzie*, 30 Miss. 32.

This position is untenable, upon the facts stated in the bill, for very manifest reasons. The right of the complainants, under the agreement set up in the bill, accrued upon the satisfaction of the debts intended to be secured to Anding by the proceeds of the crops in the year 1844. At that time Davis was dead, and they were all minors; and, under the rule stated in *Masters* v. *Dunn*, 30 Miss. 264, as they were all minors when the cause of action accrued, the statute did not commence running until the disability was removed as to all, by the youngest reaching majority. Upon the death of Anding, the appellants, his representatives, merely succeeded to his rights, and came into possession of the estate, subject to the same conditions upon which he held it.

As to the relief sought in relation to the real estate, it is not merely for the recovery of the land, but for the rents and profits, and for an account thereof. This in its nature is a joint claim, and comes within the rule above stated. And whilst it is true that, in the case of a trust, such as is set up in this bill, or of a mortgage, an adverse possession, continued for a period sufficient to create a bar by the statute, will prevail over the claim of the rightful owner, yet such a possession will never prevail against parties under disability, and whose rights are protected by the saving of the statute.

Secondly. It is said that, as no time was specified for the payment of the debt, according to the statements of the bill, Davis had the right to pay the debt at any time, and to file his bill to redeem the property; and hence, that the right of action accrued in the lifetime of Davis. But there is no force in this view. The bill states that possession of the property was delivered to Anding in order that he might work it, and with its proceeds pay the debt; and that he had possession under an agreement to that effect. It alleges that that agreement was continued until the purpose contemplated was accomplished. Although Davis might have paid the debt at an earlier period, yet if the agreement was continued, as it is alleged it was, until the debt was satisfied by the proceeds of the property, it is very clear that the right of action did not accrue until that time.

Thirdly. It is said that the action accrued to Richards as ad-

ministrator of Davis, who might have sued in 1845, and that the action, having accrued at that time, is barred. This objection can have no application to the claim set up in the bill, that the property was held by Anding under a trust to be conveyed to the complainants; for, in that respect, the administrator of Davis had no interest in it, or right to sue for it.

So far as the bill treats the transaction as a mortgage, the administrator had no right to sue for the real estate. The debt having been paid, as is alleged, the remedy was not by bill to redeem, but to recover the property. And as to the personalty, it appears that the complainants were all infants during the period of that administration, and that their disability continued until the institution of this suit. It is well settled that their rights will not be prejudiced by the failure of their trustee to sue in their behalf. *Bacon* v. *Gray*, 23 Miss. 140; *Fearn* v. *Shirley*, 31 Ib. 301.

But, under any view, this ground of demurrer should have been overruled, because the demurrer, being taken to the whole bill, could not be sustained, though it were well taken as to a part, unless the bill was insufficient in all respects, as to the relief sought. *Graves et al.* v. *Hull*, 27 Miss. 420. And though it were well taken to the bill in its aspect of seeking to establish a mortgage, yet as it was untenable in relation to the bill, in its aspect of setting up a trust in Anding, to be executed by conveyance of the property to them, a demurrer to the whole bill could not have been sustained upon the ground under consideration.

Fourthly. It is said that twenty years' possession by Anding and his representatives is *prima facie* a bar to the complainants' claim; and after such possession, that the right of parties claiming adversely to it cannot be established by parol evidence. But if the right of the complainants was ever competent to be shown by parol evidence, that right continued during their disability, as well with reference to the evidence by which their right was to be shown, as to the privilege of instituting their suit; for the right to institute suit, after the removal of their disability, would be nugatory, if the parties were, in such a case, deprived of the evidence to establish their claim.

The demurrer was, therefore, properly overruled, on the ground of the Statute of Limitations.

The only remaining ground of demurrer insisted on is, that as the bill seeks an account, it is necessary that there should be an administrator of Davis's estate, who should have been made a party, because a decree upon this bill would not bar the claim of such administrator, if one should be hereafter appointed.

This objection appears to be fully obviated by the allegations of the bill. It alleges that there are no debts of Davis's to be paid, and of course there could be no necessity for an administration, except for the benefit of the complainants. If there be any outstanding debts, they must be barred by the Statute of Limitations; and a suit by an administrator to recover the property, or for an account, would also be barred, as that action accrued, if maintainable at all by an administrator, to the original administrator, and the statute having commenced running at that time, the claim would now be barred. The right of the heirs and distributees to sue in their own names, under such circumstances, is well settled. *Wood* v. *Ford*, 29 Miss. 65; *Manly* v. *Kidd*, 33 Ib. 141.

But, besides this, in a material aspect of the bill, the administrator of Davis could have no interest in the subject-matter of the suit, that part of it which sets up the agreement of Anding to reconvey the property to the complainants. If this be true, it is clear that the administrator of Davis could have no concern with the suit.

It follows from these views of the case, that the demurrer was properly overruled. The decree is, therefore, affirmed, and the cause remanded, and the defendants required to answer the bill within sixty days.