W. N. TIGNER ET AL. *v.* LOUISE S. McGEHEE ET AL.

1. CHANCERY.   *Testamentary disposition.   Charge on land deeded.   Pecuniary legacies.*

Where a man has conveyed his lands and subsequently made a will bequeathing pecuniary legacies to persons other than the grantees in the deed, and the circumstances show that the execution of the deed was a part of a testamentary scheme, the grantees owners of the property conveyed and to require them to pay out of the purchase-money thereof, the pecuniary legacies given in the will, a court of equity will, after the death of the testator, charge the land with the payment of the legacies, notwithstanding the deed on its face appears to be an absolute conveyance, having no reference to a testamentary disposition.

2. CHANCERY PRACTICE.   *Evidence.   Promissory notes absent.   Certificate under sect. 1628, Code 1880.*

Where it is proper for the complainant in a suit in chancery to produce at the hearing certain promissory notes, as a part of his evidence, if it be shown that the notes should have been filed with the papers in a pre-existing suit, the certificate of the clerk in whose office such papers should be made under sect. 1628 of the Code of 1880, that the notes cannot be found in his office after diligent search for them, is a sufficient foundation to authorize the admission of secondary evidence of the existence, contents, and genuineness of the notes.

APPEAL from the Chancery Court of Hinds County.

Hon. E. G. PAYTON, Chancellor.

On the sixteenth day of June, 1853, William Tigner signed and acknowledged a deed purporting to grant and convey to his two sons, Clark H. and William N. Tigner, a large tract of land, known as "Millbrook plantation," in Wilkinson County, together with the slaves, stock, and other personal property thereon, "for and in consideration of the sum of $60,000, secured to be paid by a number of notes, payable in five annual instalments, to be paid by the said Clark H. Tigner and William N. Tigner, at or before the sealing and delivering of this deed." On the 9th of May, 1854, William Tigner made his last will and testament, whereby he disposed of his remaining property in lands and slaves, specifically, and gave pecuniary legacies to the amount of about $60,000 to his children and grandchildren, including

$10,000 to his sons C. H. and W. N. Tigner each. On the thirtieth day of October, 1854, William Tigner died, and on the 27th of November, 1854, his will was probated, and C. H. Tigner and W. N. Tigner qualified as executors. In 1859, W. N. Tigner sold his interest in the Millbrook plantation to C. H. Tigner. In 1862, the latter died, leaving a will devising his property to his wife and children equally. His wife, M. L. Tigner, was appointed executrix of his will, and guardian of his children. In 1863, W. N. Tigner died and his wife became administratrix of his estate. In 1866, W. T. Ogden and other legatees under the will of William Tigner, filed their bill in chancery against the executrix of C. H. Tigner's will and the administratrix of W. N. Tigner's estate, alleging a state of facts upon which they claimed that their legacies, which had not been paid, were a charge upon Millbrook plantation, and asking that the same be sold to pay the amounts due them. The defendants, the executrix and administratrix, made no defence to the bill, and a decree was rendered on the 23d of May, 1867, directing a sale of Millbrook plantation to pay the legacies. In November, 1870, the plantation was sold under this decree, and bought by Scott McGehee for $4,000. In 1873, McGehee conveyed the land to his wife, Louise S. McGehee. In 1877, the children of C. H. Tigner brought an action of ejectment to recover Millbrook plantation from Louise S. McGehee who, in connection with her husband, had been in possession of the same since his purchase. On the trial of that action the plaintiffs recovered a judgment, on the ground that they were not parties to the chancery suit in which the lands were sold. Then Louise S. McGehee and her husband filed the bill in this case, against the plaintiffs in the action of ejectment, to enjoin the execution of the judgment obtained in that action. This bill recites most of the facts above stated, and alleges also, that the money paid for the land by McGehee was applied to pay off legacies that were a specific charge on the land; that C. H. and W. N. Tigner took the land under the deed and will subject to the payment

of these legacies; and that C. H. Tigner's estate was insolvent. The bill claimed that, if not entitled to hold the land, the complainant should be reimbursed out of it for the purchase-money paid by McGehee. The injunction was granted; and the defendants answered, denying that the legacies, to the payment of which McGehee's money was applied, were charges upon the land, and calling for proof of the genuineness of the claims of those who had received the money. The proof showed these facts: the deed from William Tigner to his sons, C. H. and W. N. Tigner, was not filed for record till about ten days after their father's death. On the same day that William Tigner made his will, C. H. and W. N. Tigner gave their promissory notes to the legatees, to whose claims the money paid by McGehee had been applied, for the exact amounts bequeathed them as pecuniary legacies. These notes were in the possession of William Tigner till his death, when they fell into the hands of his executors, who afterwards delivered them to the payees. The plantation remained in the possession of William Tigner till his death; and if his sons ever paid any of the purchase-money thereof to him, or even executed their notes therefor except to the legatees for the amounts of their legacies, as specified in the will, there is no evidence of the fact. The will of William Tigner disposed of all of his property, not including Millbrook plantation, and there were no means with which to pay the pecuniary legacies except the purchase-money due by C. H. and W. N. Tigner, for Milbrook plantation. The notes of C. H. and W. N. Tigner to W. T. Ogden and others, legatees, were not produced at the hearing, but their absence was explained and their existence and contents proven, as is fully stated in the opinion of the court. The court rendered a decree declaring the complainant entitled to be reimbursed for the purchase-money paid by McGehee, and making it a charge upon the land, on the ground that it had been applied in payment of legacies, which were them-

selves charges upon the land. From this decree the defendants appealed.

This suit was instituted in Wilkinson County, where the land is situated, but the chancellor there being disqualified to try the case, it was transferred, as provided in the statute, to Hinds County, in the district of another chancellor.

*Frank Johnston*, and *C. P. Neilson*, for the appellants.

There was no vendor's lien on the land, as the aggregate sum was given for the land and a large lot of personal property as one entire contract, with no evidence as to the price of the land, or price of the personal property. *Wasson* v. *Davis*, 34 Texas, 168 ; *Sutton* v. *Sutton*, 39 Texas, 552 ; *Swain* v. *Cato*, 34 Texas, 398 ; *Growning & Co.* v. *Bern & Co.*, 10 B. Mon. 385. On another ground there was no lien. Wm. Tigner was vendor and grantor, made the conveyance without any reservations of lien, express or implied, and the notes were made payable directly to third parties, who were neither grantors nor vendors, and who had nothing to do with the sale. In such case there is no vendor's lien, the implication being that the obligation of the vendee is taken as a substitute for the purchase-money. *Patterson* v. *Edwards*, 7 Cush. 67 ; *Skaggs* v. *Nelson*, 3 Cush. 88 ; *Pitts* v. *Parker*, 44 Miss. 247.

It is immaterial that Wm. N. and Clark H. Tigner may have given their notes to Wm. Tigner on the execution of the deed, and afterwards, on surrender of part of the notes, executed new notes to the persons indicated by the vendor and grantor. It would stand, then, in no different attitude than if it had been done this way originally and at the outset. In this proposition, I have assumed that the deed of June 13, 1853, was effectual and operative as a deed, and vested title by purchase in Wm. N. and Clark H. Tigner. In the absence of proof to the contrary, the assumption must be, from the deed and acknowledgment, conclusive that it was delivered, that is, fully executed, on the day of its date. *Kane* v. *Mackin*, 9 Smed. & M. 387.

Again, the deed recited that the grantees had given their notes for $60,000, and the delivery of the notes was admitted in the deed. The deed is in express terms an absolute grant and conveyance absolutely to the grantees. And it informs us that the grantees had bound themselves by their notes for the purchase-money. Assuming these premises to be correct, it is clear that the contract was fully executed, and that the title to the lands in fee vested then in the grantees under the deed. The notes given by those purchasers for the purchase-money, to the extent of the novation it may be admitted, was part of a testamentary scheme. But the devise of Millbrook was no part of a testamentary contrivance. On the proposition that the deed is operative as a deed, I refer to *Wall. v. Wall*, 1 Geo. —, where the instrument, a voluntary conveyance, reserved a life estate in the grantor, but did vest *in præsenti* an estate in the grantees. It was declared to be a deed binding as a covenant to stand seized to the use of the donees. Moreover, the delivery in that case was only constructive, with a power of revocation. 1 Geo. 97, 98, 99. The test is whether an estate *in præsenti* is granted, and it is immaterial that it is to be enjoyed in future. *McDaniel v. Johns*, 45 Miss. 642, 643 ; *Cameron v. Cameron*, 10 Smed. & M. 394. If the intention shown by the whole instrument was that it should only have a future operation, it will be a will. *Sater v. Santor*, 39 Miss. 771. In the case at bar, in form, it is a perfect deed. Moreover, it was for a full consideration delivered the day of its date, and the grantees under full penal obligation to pay the price.

But this complainant never made out any case for relief. The debt was not proved. The original notes were not admitted by the minor defendants as debts. They are denied in their answer, and if they had not been denied, the complainant was required to prove them. Those original notes never were filed in the case of *Ogden v. Tigner*. That record affirmatively shows that copies were filed. It was, therefore, an idle thing to ask the clerk to search for the originals in that record. As

matter of law, we deny that satisfactory preliminary proof was made of their loss.

*Frank Johnston*, and *C. P. Neilson*, also made oral arguments.

*W. P. & J. B. Harris*, for the appellees.

The forms and methods by which Tigner, the elder, provided for his family out of his property, in contemplation of death, are flexible to the actual intent and purpose. We maintain that if the conveyance importing a sale of Millbrook to the two sons, in 1853, was made with the understanding that the sons were to take the property at the vendor's death, and pay certain sums as legacies or portions to the vendor's children and grandchildren, which should be named, and their portions fixed by the grantor by will or otherwise, the acceptance of the property, coupled with the agreement, created an implied trust in favor of the persons to whom the sums were appointed. "Courts of equity will imply a trust from the contracts of parties, although there are no words of trust in the instrument," and so from the provisions of a title. Trusts may arise by implication from the indirect intent shown by the acts of parties, without any particular form of words. *Norman* v. *Burnett*, 25 Miss. 183 ; Perry on Tr., sects. 121, 122. At the date of these transactions parol trusts were valid and might have been proved, though in direct conflict with the terms of a conveyance. *Anding* v. *Davis*, 38 Miss. 574. If the deed had, in terms, declared that the conveyance was made subject to the payment, by the grantees, of certain legacies to be appointed by a will, to certain objects of intended bounty, the will and the deed performing together a disposition of the property of the grantor and testator, would create a charge on the property. So, if the deed contained words of condition that the grantees should pay forty thousand dollars in legacies to other children to be appointed by a will, a like result would follow. We insist that the facts here established prove beyond a doubt that the property was granted and accepted, subject to such condition, and this creates the implied trust, and without such

express words may be, and have been, shown by extraneous evidence plainly evincing the purpose.

It is established by numerous cases that the acceptance of property devised or granted, where the will or deed, for there can be no difference, discloses an intention that the recipient of the property is to pay certain legacies or sums appointed to others, the acceptance creates a charge on the property, although there are no express words of trust or condition, and whether there is a personal liability created or not. 2 Jar. on Wills, 505, note. Although a deed may not in itself be a testamentary instrument, it may be connected with a will or form the groundwork of a testamentary act. 31 Ala. 59 ; 2 Strobh. 34. The points made on the admission of certain evidence are of no avail. The complainants never had possession of the notes, and were never entitled to hold them. By a rule of law they should have been produced before the commissioners in the case of *Ogden et al.* The clerk certifies that they were not to be found in his office. There was proof that the notes once existed, and that the legacies and notes represented the same thing. The will establishes the legacies. And we ask why is not a decree establishing the notes in a suit against the makers or their representatives sufficient *prima facie.* The complainants could not be required to account for the loss of the notes, not being in any way responsible for them.

*W. P. Harris,* argued the case orally.


CAMPBELL, C. J., delivered the opinion of the court.

We are satisfied by the evidence that the conveyance made by William Tigner, of the land constituting " Millbrook " and the other property embraced in it, was made as part of the testamentary scheme of the grantor, and, although by the conveyance the title of the property was vested in W. N. Tigner and C. H. Tigner, it was held by them subject to the payment of the legacies created by the will of the grantor, whose plan was to make them the holders of the property and the payors out of it of the legacies. The circumstances all combine to

show that that was the nature of the transactions which produced the deed and notes and will, and, this being the case, the grantees in the deed held the property subject to a trust which equity will enforce as a charge upon it.  *Anding* v. *Davis*, 38 Miss. 574 ; 3 Redf. on Wills, p. 478, sects. 22, 30 ; 2 Jar. on Wills, 505, note 2.

The certificate of the clerk of the Chancery Court of Wilkinson County, that the notes were not found in his office after diligent search, was legal evidence of that fact (Code 1880, sect. 1628), and was sufficient, in the circumstances of this case, to admit evidence of the contents of the notes, and the evidence of their existence and genuineness, and of the office they were to perform is abundant.  They were drawn up by William Tigner, signed by his sons W. N. and C. H. Tigner, retained in the possession of William Tigner with the deed he had made, written upon by him the 14th of September, 1854, six weeks before his death, left among his papers at his death, obtained by the makers as his executors, and delivered by them to the payees and legatees.  They were exhibited to Mrs. Womack in taking her deposition, and should have been filed with it among the papers in the suit of *Ogden et al.* v. *Tigner*, and failure to find them in the office in which that suit was, made evidence about them competent.

Decree affirmed.