TILLMAN SOGGINS *v.* WILLIAM S. HEARD, Executor, &c.

1. Trust: statute of frauds.—It is well settled that when a party agrees, before the sale, with the judgment debtor, whose land has been levied on, that he will purchase it and give the debtor the benefit of the purchase, that the agreement

Soggins v. Heard.

is binding, and not within the Statute of Frauds; and a purchaser, under such circumstances, is a trustee for the debtor.

2. TRUST: STATUTE OF LIMITATIONS.—The trust created, by the purchase, at an execution sale, of the land of the judgment-debtor, under an agreement with him to purchase and hold it for his benefit, is a continuing trust, and not within the operation of the Statute of Limitations until the trust is ended.

APPEAL from the Superior Court of Chancery, Hon. Charles Scott, chancellor.

T. J. and F. A. R. Wharton, for appellants,

Cited *Runnells* v. *Jackson*, 1 How. Miss. R. 356; *Brow* v. *West*, 7 Ib. 181; *Thompson* v. *Wheatley*, 5 S. & M. 499; *Beauchamp* v. *Robinson*, decided by this court, and not yet reported.

*Franklin Smith*, on same side.

T. C. Tupper, for appellee,

Argued that proof was wholly insufficient, under the Statute of Frauds, to establish a trust, as the conveyance was absolute on its face; and he cited *Dorsey* v. *Clark*, 4 Har. & Johns. 551; *Kisler* v. *Kisler*, 2 Watts, 323; *Sidler* v. *Walters*, Ib. 389; *Harrison* v. *Memory*, 2 Edw. Ch. R. 251; *Bruister* v. *Power*, 10 Paige, 562; *Clagget* v. *Hall*, 9 Gill & Johns. 80; *Lesley* v. *Gardner*, 3 Watts & Serg. 314; *Semple* v. *Coulsen*, 9 Ib. 62; *Jackson* v. *Rengland*, 4 Ib. 149; *Mercer* v. *Stark*, 1 S. & M. Ch. R. 479.

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the Superior Court of Chancery.

The prominent facts, as disclosed by the bill, are as follows:—Jessee Heard, the testator, about the year 1842, became the security of Soggins on a note for about $4700, to the Commercial Bank of Natchez. Soggins, in order to secure Heard, executed a deed of trust upon certain slaves in Madison county. After the execution of this deed, a tract of land belonging to Soggins, in Madison county, was sold under an execution against Soggins, and purchased by Heard. It is alleged that prior to that sale it was understood, between Soggins and Heard, that the latter should

purchase the land in his name for the benefit of the former; and that Heard purchased in virtue of this understanding. The bill further alleges that, after this purchase by Heard, it was agreed that the negroes embraced in the deed of trust, and which were then on the land, should be worked another year under the management of Heard; and that when the crop was gathered, the land and negroes should be sold, and the money applied to the extinguishment of the debt on which Heard was security, and to the reimbursement of the money which he had expended on account of Soggins, &c. That the land was accordingly sold, as also a portion of the negroes, and the money received in part by Heard, and in part applied to the payment of a part of the debt due to the Commercial Bank of Natchez; that some years thereafter, a suit was brought on the note due to the Commercial Bank; that a verdict, except for a very small amount, was rendered for the defendants in the suit; that a writ of error was prosecuted to the High Court of Errors and Appeals, in which court the judgment was affirmed, when an appeal was prosecuted to the Supreme Court of the United States, where the judgment was also affirmed, about January 1854. Hence, it is insisted by the bill, that Heard, having received the money for the purpose of applying it to the payment of this debt, if a recovery should be had, held it under a trust to account to the complainant for the same, if the debt to the bank should not be recovered. Such at least is the proposition presented by the bill. The bill further states that Heard, at the time of his death, was indebted to the complainant on account of money received from a sale of the land and negroes, in about the sum of $5000. The object of the bill is to establish the trust alleged, and to obtain a decree for such sum as shall appear to be due on account of such trust to the complainant. The gravamen of the bill may be treated as denied by the answer.

No question is made, as to the trust, in regard to the slaves; the only point is, whether it attached to the land.

It is not now an open question, that when a party agrees before the sale to purchase property about to be sold under an execution against a party, and to give such party the benefit of the purchase, that the agreement is binding, and will be enforced. The defend-

ant, upon the faith of such an agreement, may have ceased his efforts to raise the money for the purpose of paying off the execution, and thus preventing a sale of his property. It will not do to say that the party promising, was moved merely by friendly or benevolent considerations, and may, therefore, at his option, decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust, and the trustee should be held to account as nearly as possible, in the same spirit in which he originally contracted. But it is said that the agreement, if in fact made, was void under the Statute of Frauds. The statute has reference alone to the sale of lands, and not to a contract to purchase by one person for the benefit of another.

Again, it is said that the contract was not to be performed within a year, and is, therefore, void under this clause of the statute. There is nothing appearing either in the allegations of the bill, or in the proof, that the trust, if it existed, was not to be performed within a year. The fact that performance was delayed for several years, is no evidence that such was the contract. The parties both believed that, by delay, they could make a profit by resisting payment of the debt asserted by the Commercial Bank, and this, no doubt, was the reason why performance was not sooner tendered or asked by one or both of the parties.

It is next insisted that the Statute of Limitations constitute a defence to the bill. Heard, under the arrangement, was not bound to part with the money in his hands until the suit of the Commercial Bank should be finally settled, which was not done until the decision of the Supreme Court of the United States, in 1854.

It only remains to inquire whether the trust is sufficiently established. We deem it unnecessary to refer either to the exhibits or to the depositions of the several witnesses. The testimony, taken as a whole, in the clearest manner, establishes the trust as to the land.

We are, therefore, of opinion, that the decree dismissing the bill as to the claim asserted on account of the money arising from the sale of the land is erroneous, and ought to be reversed.

Decree reversed, and the trust declared as to the land, in the same manner as declared by the chancellor in regard to the slaves.