## DUVAL *v.* SCHOOL DISTRICT OF FT. SMITH.

### Opinion delivered October 28, 1899.

SCHOOL DISTRICT—SALE OF LAND—EFFECT.—A school district loaned money to a corporation, secured by a mortgage on land. At maturity of the mortgage the school district was proceeding to foreclose when one of the corporation's stockholders proposed that the school district buy in the land at foreclosure sale and convey it to him, upon his paying part of the purchase money, and executing a mortgage upon the property to secure the remainder, which was done. In a suit by the school district to foreclose the latter mortgage, *Held*, that the school district acted as trustee for the stockholder in making the purchase; that it was merely a mortgagee of the land, and not a vendor, within the act of April 1, 1891, requiring sales of land by such school district to be at public auction to the highest bidder. (Page 79.)

Appeal from Sebastian Circuit Court, Fort Smith District, in Chancery.

EDGAR E. BRYANT, Judge.

*Rose, Hemingway & Rose*, for appellants.

Since appellee's acceptance of Duval's proposition was conditioned on his carrying insurance, it did not close the contract. Metc. Cont. 14; 1 Pars. Cont. *477. The statute required the school board to sell at public sale. Act April 1, [1891; Sand. & H. Dig., §§ 7114–7120; Acts 1895, p. 74. The board had no power to bind itself to sell the property at private sale to DuVal. Perry, Tr. § 43; 2 Johns. 425. The board could not, by its unwarranted act, bind any one, and the sale to DuVal is void. 34 Ark. 346; 42 Ark. 140; 93 U. S. 257; Story, Agency, § 307*a*; Mechem, Agency, § 292; 9 Wall. 45; Mechem,

Pub. Off. § 511; 19 Ia. 199; S. C. 87 Am. Dec. 423; 99 Ind. 428, 440; 20 Ark. 354; 22 Ark. 347; 23 Ark. 87; 24 Ark. 409; 39 Ark. 583; 40 Ark. 256; 42 Ark. 120; 6 Ark. 78; 37 Ark. 142; 49 Ark. 172. School directors are public officers, and their powers are limited by the terms of the statutes. 1 Thomps. Corp. § 25; 9 Wall. 197; 5 Pet. 188. If in selling lands they exceed their powers, no title passes. 13 Pet. 436; 2 How. 317; 12 *id.* 74; 6 Wall. 143; 92 U. S. 713; 16 Wall. 335; 115 U. S. 406; 113 U. S. 134; 11 How. 291. DuVal is not estopped because: (1.) Estoppels must be mutual. 13 Ark. 217; 152 U. S. 126; 123 *id.* 551–2; Big. Estop. 334; 53 Ark. 364; 100 U. S. 564. (2.) The payment of money under a mistake of law or fact does not create an estoppel. ·46 Ark. 180; 93 U. S. 335; 150 *ib.* 335; 77 N. W. 242; 15 Ark. 62; 22 *Id.* 496; 53 *id.* 200; 64 *id.* 105; 3 De G. & J. 501; 59 Ark. 573. (3.) No estoppel can arise to prevent any one from relying on a principle of public policy or a positive statute. 31 Ark. 702; 47 *id.* 352; 48 *id.* 363; 53 *id.* 241–2; 51 *id.* 31. Nor could the school board ratify the illegal contract. 2 Pom. Eq. § 964; 19 Am. & Eng. Enc. Law, 473. The contract made after the foreclosure and purchase by the appellee should be rescinded, and the notes and deed cancelled for want of consideration. 46 Ark. 348; 33 *id.* 762; 53 *id.* 512; 1 Story, Eq. Jur. § 700. The money was lent to the corporation, and not to the stockholder (DuVal). Hence the deed can not be said to have been for money borrowed. 4 Ark. 357; 102 U. S. 160. Appellant should have a decree for the money already paid by him, less rents received. 171 U. S. 151; Green's Brice, Ultra Vires, 658.

*Cockrill & Cockrill,* and *Charles E. Warner,* for appellee.

The board bid in the land for DuVal, and was merely a trustee for him or a conduit of title. 2 Warv. Vend. 589; 46 Ark. 32; 20 Ark. 381; 41 Ark. 264, 270. The whole transaction of the purchase and resale was to continue the loan of its funds and substitute DuVal for the original mortgage debtor; and this was not prohibited by the act of 1891. The presumption, where in one phase a contract is illegal and in another legal, is

that the party intended to comply with the law.   46 Ark. 129. The substance, and not the form of the transaction, is to be looked to.   52 Ark. 30, 42, 43; *ib.* 65; 54 Ark. 6.   Equity will treat that as done which ought to have been done; and DuVal must be held to be the real purchaser.   2 Warv. Vend. 580; 47 Ark. 285; 33 Ark. 239; 41 Ark. 282.   The doctrine of *ultra vires* will not be applied to defeat the ends of justice, if such a result can be avoided.   96 U. S. 312, 315; 2 Herm. Estop. § 1178; 2 Kent, Comm. 381.   The approval of the sale by the court vested a good title in DuVal.   The act of 1891 does not declare a private sale void, and the courts will not impose penalties not found in the act.   103 U. S. 99; 98 U. S. 62; 56 Ark. 47.   The act was not *ultra vires* (5 Thomps. Corp. § 5975, 5977), and the deed would have bound the school district by estoppel.   5 Thomps. Corp. §§ 5978, 6016, 6025; 102 Mo. 149; 113 N. Y. 423; 145 U. S. 393; 96 U. S. 258, 267; 12 C. C. A. 14, 22; S. C. 64 Fed. 36.   Estoppel may apply to an act strictly *ultra vires.*   Dill. Mun. Corp. pp. 444, 516, § 675; 2 Herm. Est. § 1222.   DuVal is estopped to set the plea of *ultva vires.*   50 Miss. 403; 43 Wis. 421; 102 Mo. 149; 5 Thomps. Corp. §§ 6024, 6025–6; 47 Ark. 269, 284; 48 Ark. 254, 256.   If the act was illegal, the parties being *in pari delicto,* DuVal cannot recover.   12 C. C. A. 14; 145 U. S. 407.

·  *Rose, Hemingway & Rose,* for appellants in reply.

The deed of the trustees to DuVal, being made in viola‐ tion of the statute, was void, and conveyed no title.   101 U. S.· 82, 86; 47 Ark. 383; 29 *id.* 386; 33 *id.* 450; 1 Whart. Cont. § 360; Bish. Cont. § 458; 32 Ark. 631; 166 U. S. 340; 25 Ark. 267; 59 Ark. 356; 28 Ark. 362; 33 Ark. 450; 37 Ark. 110; 48 Ark. 246; 31 Ark. 339; 130 U. S. 22; 19 Ark. 308; 2 Jones, Mort. §§ 1822, 1831, 1839, 1842, 1845, 1852.   As in ordinary cases of failure of title in land sales, the vendee has a lien for whatever payments he may have made.   30 Ark. 692.   Further, that there is no estoppel in this case, see:   130 U. S. 37; 58 Ark. 275; 59 *id.* 361.   Nor does the doctrine of parties *in pari delicto* apply to DuVal.   22 N. Y. 507; 131 U.

S. 349; 7 Wall. 558.    Appellant should be given the difference between what he has paid and the rents, etc., received by him. 23 Fed. 214; 131 U. S. 389; 107 U. S. 353; 5 Thomp. Corp. § 6004; 10 Wall. 684; 4 Ark. 289; 49 Ark. 25; 52 Ark. 481; 102 U. S. 299; 106 U. S. 503.    No trust on the part of the school board in favor of DuVal is shown, and, to establish such, *clear and convincing* evidence is required.  64 Ark. 162; 41 Ark. 400·; 57 Ark. 637; 44 Ark. 365; 48 Ark. 174.  Under terms of the act of 1891, no title passed until the requirements were complied with.    58 Ark. 307; 54 Ark. 480; 62 Ark. 214; 34 Ark. 346; 32 Ark. 97.

BATTLE, J.    On the 10th day of July, 1896, the School District of Fort Smith filed its complaint in equity against Ben T. DuVal and his wife, alleging the following facts:

"On the 6th day of December, 1892, the defendant, Ben T. DuVal, executed to the plaintiff several notes, of $5,000 each, payable in five, six, seven, eight and ten years, amounting in the aggregate to $25,000.    On the same day the defendant, Ben T. DuVal, executed his mortgage to the plaintiff for $25,000 on a certain piece of land lying in Fort Smith, known as the 'Grand Opera House Property'; the mortgage providing that if any of these notes should not be paid at maturity, then the land might be sold for payment thereof. That there was then due on the notes, and for taxes and insurance paid by the plaintiff, the sum of $31,385.62.    That DuVal's wife had joined in the mortgage for the purpose of relinquishing her dower."    The prayer of the complaint was that the mortgage be foreclosed, and for all other proper relief.

The defendants answered, and made their answer a cross-complaint, in which they alleged that the notes sued on were given for the purchase money of certain real estate sold to Ben T. DuVal by the plaintiff, and that the notes were without consideration, because the sale was not in conformity with the statutes in such cases made and provided.    In order to make the answer and cross-complaint more intelligible, we state that by an act of April 1, 1891, it was provided that the board of the School District of Fort Smith might buy at any sale of

lands donated to the city of Fort Smith by congress, and become the purchaser of any property situated in the school district, on or in which it might, at the time of such purchase, have any lien or any interest, whenever in the opinion of the school board it should be necessary in order to protect the interest of the school district. The act then proceeds as follows:

"Provided, that no sale of real estate, or lease thereof, shall be made by said school board except at public auction, to the highest bidder, after an advertisement of twenty days in some newspaper, or an advertisement of four weeks in a weekly newspaper published in said city, if there be no daily newspaper in said city, giving the time, place and terms of sale, and a description of the property to be sold. Provided, also, that all sales shall be for not less than one-third cash, and balance of purchase price shall be secured by a mortgage upon the property sold; which mortgage shall not run longer than five years, at not less than 8 per cent interest, payable semi-annually in advance, on the first days of January and July of each year. Provided, further, that in case of lease the lessee shall give bond, to be approved by said school board, for the prompt payment of the rental, or the amount for which said property was leased, in advance, on the first days of January and July of each year. Provided, also, that no sale or lease of property by said school board shall be effectual to pass the title to said property, or leasehold therein, until said sale or lease has been reported to and approved by the circuit court of Sebastian county for the Fort Smith district in the manner hereinafter provided."

"Sec. 2. When said school board shall have made a sale or lease of real estate as hereinbefore provided, the president and secretary of the board shall make full report thereof to said circuit court, verified by affidavit; said report shall remain on file in said court for a period of ten days before action is taken thereon by said court, during which time any citizen of Fort Smith, or said school district, may file his objections or exceptions to said sale, and the same shall be heard by the court; and if it shall appear that said sale or lease was not fairly or

properly conducted, or that said land was sold or leased for an inadequate price, or it was not for the best interest of said school district to sell or lease the same, then said court shall set aside said sale."

The defendants alleged in their answer and cross-complaint, as follows:

"That the notes and mortgage sued upon were executed to the plaintiff for a part of the purchase money of the property mentioned, which the plaintiff agreed and undertook to sell to the defendant for $33,788.85 at private sale. That the plaintiff also pretended to execute to said DuVal its deed of conveyance, dated December 6, 1892, signed by the president and secretary of the school board; for the sum last named, of which defendant paid in cash $8,788.85.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"That the plaintiff, in undertaking to sell said lot to the defendant, neither offered it at public auction to the highest bidder, nor did it advertise it twenty days in a newspaper or otherwise, giving the time, place and terms of sale, and description of the property to be sold, nor for one-third cash; and the mortgage taken for the deferred payments was for more than two-thirds of the purchase money, and ran longer than five years. Neither did the president and secretary of the board of directors of the school district make report of said sale to the circuit court, as required by the statutes in such cases made and provided. Wherefore they say that by said attempted sale to the defendant, and deed made by the plaintiff, no title was passed; and the notes sued upon, and the mortgage given to secure them, are without consideration and void. Wherefore the said attempted sale should be rescinded and canceled, and the money paid by defendant to the plaintiff should be refunded."

The plaintiff answered the cross-complaint, alleging as follows:

"It is not true that the notes were executed for the opera house property, but they were executed for money lent by the plaintiff to the defendant, as is recited in said notes and in the face of the mortgage. The facts regarding the execution of the notes are as follows:

"In 1887 defendant DuVal, Wm. M. Cravens and John S. Park organized a business corporation styled the Grand Opera House Company, of which defendant was a large stockholder and president. The board of directors of the opera house company secured two loans from plaintiff, one on March 16, 1887, for $15,000, and one on September 26, 1887, for $15,000, both of which were secured by mortages made by the Grand Opera House Company, the first executed by defendant as president, and the second by Cravens, as vice-president, said loans bearing interest at the rate of eight per cent. per annum. Payments on the notes and mortgage being greatly in arrears, on December 4th the school board directed its secretary to call on DuVal for a written proposition as to what the opera house company proposed to do in regard to said loans. On the 8th of February, 1892, the plaintiff adopted a resolution extending the loan upon certain conditions; and on February 12, 1892, the board resolved to take no action looking to the foreclosure of said mortgage, provided interest was paid by a certain time; but that, as the Opera House Company did not comply with the terms of this resolution, the plaintiff was about to foreclose, when, on February 26, 1892, DuVal appeared before the board, and the matter was discussed, when it was resolved by the school board not to proceed with foreclosure on certain conditions. DuVal and the Opera House Company failing to comply with these conditions, the school board instituted proceedings for the foreclosure of said mortgage, in which a judgment and decree of foreclosure was rendered in the Sebastian circuit court on the 20th day of April, 1892. According to the terms of said decree, the opera house property was advertised for sale on the 6th of June 1892. DuVal was anxious to become the sole owner of the property. On the 28th of May, 1892, he sent to the school board the following proposition in writing:

"'Fort Smith, Ark., May 25, 1892. To the Fort Smith School Board, Fort Smith, Ark: Gents: The Grand Opera House is advertised to be sold under decree of foreclosure on the 6th day of June next. The decree was entered as of April 20, 1892, for $33,301.49, with interest at 8 per cent,

which, up to the day of sale, amounts to about $346.00. Balance, principal and interest, $33,647.49. Costs, including commissions, not known. You all understand my relations to the property. I have made arrangements by which, if I purchase the property at the sale, to pay the interest and $5,000 of the principal, so as to reduce the debt to $25,000. For the balance, I propose to give my notes payable by installments in five, six, seven, eight and ten years, at 8 per cent, payable semi-annually, on the first days of June and December, secured by a mortgage on the property, conditioned that a failure to pay promptly shall make all due at once, and, if desired, will assign as further security whatever lease I may make on the opera house property. With this agreement, I can save the property, and pay the debt due the school fund.'

"This proposition was accepted on the condition that DuVal should carry $20,000 insurance on the property. In accordance with this proposition and agreement, it was expected and understood by the school board that DuVal would buy the property at the foreclosure sale to be made on the 6th of June following, but before that time, in conversation about the matter between the secretary of the school board and DuVal, the question was suggested as to whether, if DuVal purchased, he might not be considered in law as chargeable as trustee for the Opera House Company. On this account DuVal suffered and allowed W. R. Martin, the secretary of the school board, to buy the property in the name of the school district, with the distinct understanding that the school board should convey to DuVal such title as it acquired by said purchase, upon the terms set forth in the written proposition of DuVal and accepted by the school board.

"Immediately after the sale DuVal paid to the plaintiff $8,788.85 including all interest and cost of the foreclosu·e proceedings, and $5,000 of the principal debt, leaving then due $25,000.

"The purchase of the property at the foreclosure sale, and the agreement to convey the title acquired to DuVal, constituted the only consideration. The $8,788.85 paid by

DuVal was intended to complete the foreclosure sale. It was understood by DuVal that the school district did not buy for itself, but for him; the school district having bought only as trustee for him. DuVal has never, until the bringing of this suit, made any pretense that he was not the owner of the property."

Upon a final hearing of the cause upon the evidence adduced by both parties, the court found as follows:

"1.   That during the year 1887 the plaintiff loaned the sum of thirty thousand dollars to the Grand Opera House Company, a corporation organized under the laws of Arkansas, and located at Fort Smith, of which company the defendant, Ben T. DuVal, was a stockholder, and the president of its board of directors; that said loan was embraced in two items of $15,000 each, · the first being dated May 16, 1887, and the second, September 26, 1887, each being evidenced by notes, and each being secured by a mortgage duly excuted, conveying the property known as the 'Grand Opera House Property' and particularly described in the original complaint herein; that said debt for borrowed money bore interest payable semi-annually at the rate of 8 per cent per annum; and that said borrowed money was not paid when due, and default was made in the conditions of said mortgages, so that plaintiff began in this court, at the April term thereof, 1892, proceedings for the recovery of judgment and foreclosure of the said mortgages, and on the 20th day of April, 1892, a judgmeent was had in the said proceedings for said debt, interest and cost, and for the foreclosure of said mortgages.

"2.   That prior to the recovery of said judgment the said DuVal personally appeared before the board of directors of plaintiff, School District of Fort Smith, and endeavored to effect some arrangement of said indebtedness, but did not succeed in doing so, and that after said judgment was rendered the said property, in pursuance thereof, was advertised for sale on the 6th of June, 1892; that said DuVal, being desirous of becoming the owner of said property in his own right, and to assume and to pay the said mortgage indebted-

ness as ascertained and adjudged by the said decree, sub-
mitted to the board of directors of plaintiff, on the 28th of
May, 1892, a proposition in writing, wherein he proposed to
become the purchaser of said property at the foreclosure sale
to be had on June 6th, at and for the amount of the judg-
ment, interest and costs, then stated by him to be $33,647.49,
exclusive of costs, which costs were not then fully known,
and that in case he purchased the same he could pay all
interest and costs and $5,000 of the principal in cash,
thus reducing the principal debt to $25,000, and for that
he would execute his five several promissory notes in install-
ments of $5,000 each, payable in five, six, seven, eight and
ten years, bearing interest at 8 per cent, payable semi-annually
in advance, and to be secured by a mortgage on said property,
and that, if said board would accept this proposition, he could
thus save the property; that said board of directors of plain-
tiff, being desirous of aiding said DuVal in saving said prop-
erty, by resolution of that date accepted his proposition, with
the further condition that he should carry certain insurance
on said property, and that, on his failure to pay any part of
said indebtedness when the same fell due, the whole thereof
should be due, to which conditions the said DuVal assented, as
is shown by the facts and by the contract afterwards, on the
day of the sale, delivered to him by the said board; that it was
intended, both by the said board of directors and the said
DuVal, that the said DuVal would buy said property at said
foreclosure sale as previously agreed on, but before the sale
occurred, for some reason, it was agreed by DuVal and the
school district that the plaintiff, School District of Fort Smith
should bid the amount of said judgment and costs for the said prop-
erty, and buy same at said sale for him, the said DuVal, in pursuance
of the agreement previously made, so that, when said sale was in
fact made, the plaintiff bid off said property for the amount of
said judgment and costs, and the same was struck off and sold
to plaintiff; that immediately thereafter the said DuVal, in
accordance with his proposition made as aforesaid, paid to the
plaintiff the sum of $8,788.85, the same being the amount
required to reduce said mortgage debt, interest and costs down

to the balance of $25,000, and at the same time plaintiff, School District of Fort Smith, executed and delivered to the said DuVal a contract whereby it agreed to convey such title as it acquired by said purchase to said DuVal as soon as said sale was approved by the court, and said DuVal went into immediate possession of the said property. ·

"3. That, on December 6, 1892, the said sale having been confirmed by the court, plaintiff, School District of Fort Smith, made, executed and delivered to said DuVal a deed of conveyance, conveying to him the said property for the same consideration, to-wit, the said cash payment of $8,788.85 and the balance of said original mortgage debt of $25,000, for which said DuVal executed and delivered to plaintiff his five several promissory notes, each for $5,000, and due and payable in five, six, seven, eight and ten years respectively, with 8 per cent. interest, payable semi-annually in advance, for which interest coupons were attached, stipulating that, if interest was not paid at maturity, it should draw interest at 10 per cent.; and for the purpose of securing the full and prompt payment of said notes, and interest accruing thereon, the said DuVal at the same time made and delivered to plaintiff his certain deed of mortgage, whereby he conveyed to plaintiff the said opera house property; and that detendant, Rose DuVal, as wife of said Ben T. DuVal, joined in the execution of the said mortgage for the purpose of relinquishing her dower therein.

"4. That said DuVal continued in possession of the said property, claiming the same as his own, and operating and using the same as his own exclusive property, and, on March, 5, 1894, he, the said DuVal, being then in default in the payment of interest in a large sum, and plaintiff being about to take foreclosure proceedings against him, in order to get further time said DuVal made a contract in writing with plaintiff, by the terms of which plaintiff agreed to extend the time for one year, in consideration of which said DuVal agreed to surrender all rents, income and profits arising from said property' which was to be applied to payment of expenses, first; second, to the payment of interest; and, lastly, towards the payment of principal. And that on March 5, 1895, the said DuVal

being then in ,arrears in the sum of about $3,505.70, accrued and past-due interest, and requesting a further extension of one year, the same was by the plaintiff granted, and a like written contract was made and entered into by the said DuVal and plaintiff; and that from that time forward to the present time the plaintiff has been receiving the rents and profits and paying the taxes, insurance and expenses on said property, and during all this time the said DuVal has occupied and used his law offices in said property and Box No. 1 in the opera house, without accounting for the use thereof, and that during the time plaintiff has received rents and profits from said property as aforesaid, the said rents and profits have amounted to the gross sum of $5,379,23, and during the same time plaintiff has paid taxes, insurance, repairs and expenses of said property, amounting to the sum of $4,442.65, so that there has remained a net amount of said rents and income, applied upon said mortgage debt, the sum of $936.58.    *    *    *    *    *    *

"5. That said mortgage contained a provision to the effect that, if default was made in the payment of the sums thereby secured, when the same or either of them became due and payable, then the said property should be sold for the satisfaction of said debt and interest, and that, by the terms of said agreements between the parties as hereinbefore recited, all of said indebtedness is due.

"6. And the court further finds that by the intention and agreement of said parties the purchase at said foreclosure sale by plaintiff, School District of Fort Smith, was for the use and benefit of said Ben T. DuVal; that he paid all the money which was paid upon said sale; that it was not intended that said school district should acquire ownership of said property by said purchase, except in form merely, for the purpose of carrying out the agreement of the parties; and that the plaintiff in good faith fully executed and carried out the agreement on its part in respect to the said property with DuVal, and that DuVal accepted said property as his own under said purchase, accepted said deed from the plaintiff, and never questioned its sufficiency in law until he filed his answer in this cause, a period of nearly five years after the sale."

Upon these findings the court dismissed the cross-complaint, and rendered a judgment against the defendant, Ben T DuVal, in favor of the School District of Fort Smith for the sum due on the notes sued on, and ordered that the mortgage be foreclosed to pay the same; and defendants appealed.

As the finding of facts by the court is in accordance with what appears to be the preponderance of the evidence, we accept it as true and correct, and adopt it as a correct statement of the facts in the case, as shown by the evidence.

The Grand Opera House Company was a corporation. Ben T. DuVal was one of its two principal stockholders, and president of its board of directors.   The real estate purchased by DuVal belonged to it (the company) when it executed the mortgage to secure the notes given for the money borrowed by it from the School District of Fort Smith, and thereafter remained the owner, subject to the mortgage, until the sale on the sixth day of June, 1892, under the decree of foreclosure. DuVal, as a stockholder, had no legal title to it, nor any equitable title which he could convert into a legal title.   But he had equitable rights of a pecuniary nature growing out of his relation as a stockholder.   He was entitled to share in the profits acquired by the exercise of the corporate franchises of the company, and to share in the final distribution of the corporate assets when the corporation shall be dissolved.   *Riggs* v. *C. M. Ins. Co.*, 125 N. Y. 712.   On account of this interest in the assets of the Grand Opera House Company, and to save something out of his investment in the stock of the company, it was his privilege and right to enter into the agreement he made with the school district; and when the school district purchased the property in its name for him, under their contract, it thereby constituted itself a trustee for his benefit, and bound itself to convey the property to him upon the performance of his part of the agreement.   *Soggins* v. *Heard*, 31 Miss. 426; *Arnold* v. *Cord*, 16 Ind. 177.

When the school district entered into the agreement with DuVal, it did not undertake to sell him land.   It had loaned to the Grand Opera House Company the sum of thirty thousand dollars, and had taken a mortgage on the real estate in question

to secure the same. The school district was a mortgagee only. If it could collect the amount due it in excess of $25,000, it preferred to continue the loan for the latter amount upon the conditions named in its agreement. DuVal proposed to do this, and it accepted his proposition. This contract was not contrary to the statutes or unlawful. How could its performance be illegal? When it bid for the property, it acted for and in behalf of DuVal. In so doing its act was the act of DuVal. It did not sell the land. It was sold by the court through its special commissioner appointed for that purpose. When the land was conveyed to it, it acquired and held it, not for itself, but as trustee for DuVal; and when it conveyed it to him, it executed the trust it had undertaken. All it attempted to do was to keep its money loaned, and what it did was a means devised to secure that end, and that is all it accomplished.

Decree affirmed.

BUNN, C. J., and HUGHES, J., dissent.