PUTMAN, et al. *v.* COWART, et al.

No. 39857 May 21, 1956 87 So. 2d 479

February 13, 1956 85 So. 2d 207

*Ernest Shelton, L. F. Easterling,* Jackson, for appellants.

No counsel for appellee.

GILLESPIE, J.

Appellants had lost 40 acres of land to the Federal Land Bank, apparently under some prior foreclosure. They wanted to buy it back but were unable to do so. They approached appellee to buy the land for them. Appellee agreed to do so if appellants would pay him $25 and if they would pay him back as quick as he got it; but the proof showed conclusively that appellee was to

put up the money and that he was buying the land for appellants. This was done by appellee and he took title in himself. The Federal Land Bank reserved one-half of the minerals. Appellee paid the Federal Land Bank $375.00 at the time he got the deed as the full purchase price of the land. At the time appellee purchased the land, appellants had paid appellee $175.00.

A few months after appellee received the deed from the Bank, he caused to be prepared and executed a deed from himself to appellants wherein all minerals were reserved to the grantor, appellee. The Bank had already reserved one-half of the minerals in its deed to appellee. This deed from appellee to appellants was read to appellants, but not delivered at that time. At the same time, appellants executed a note and deed of trust to appellee for $229.22, being the balance of the amount paid the Federal Land Bank less $175.00 theretofore paid appellee by appellants, plus the $25.00 charge, and $4.22 for recording fees. This deed of trust and note was dated February 15, 1937, and due October 30, 1937, with 6% interest. Appellee held the deed executed by him to appellants with the note and deed of trust until the deed of trust was paid, at which time the deed was recorded.

This suit by appellants is to reform the deed from appellee to appellants so as to cancel the provision reserving to appellee the minerals. Only a half interest in the minerals is involved since the Bank reserved half in its deed to appellee. Appellants contend that the appellee held title as trustee under a resulting trust. The chancellor applied the doctrine of resulting trust as laid down in a number of cases, including Chichester v. Chichester, 209 Miss. 628, 48 So. 2d 123, to the effect that if one buys land in the name of another and pays the consideration therefor, the land will be held by the grantee in trust for the benefit of him who advances the purchase money; and if there has been only a partial

advance of the purchase money, a trust will result pro tanto. Where upon the chancellor held that since appellants had advanced $175.00 of the $375.00 purchase price prior to appellee acquiring the land, that a trust arose as to the minerals to the extent that $175.00 bears to $375.00, or 7/15th of 20 undivided mineral acres under the 40 acre tract, or 9.331 mineral acres.

██ ■ But appellants contend that the rule in Tanous v. White, 186 Miss. 556, 191 So. 278, is applicable to the facts of this case and that the appellants are not limited to an application of the resulting trust pro tanto, but that the trust arose as to the full interest acquired by appellee in the land and minerals. We agree with this contention.

In Tanous v. White, supra, this Court said: "In Dooly v. Pinson, supra, the Court said in part (145 Ala. 659, 39 So. 667): 'Where one person advances money to another by way of a loan, through a payment to a third person for land which the borrower has purchased or is purchasing, and to secure the loan the lender takes the title of the land to himself, with the agreement and understanding between him and the real purchase that he will reconvey to the latter on repayment of the money advanced, equity will declare the holder of the title a trustee therefor, for the purchaser, and compel him to discharge the trust by the reconveyance stipulated for upon the payment to him of the money to secure which the title was vested in him.' "

In the same case, the Court also said: "In their last analysis, the facts of this case mean that Captain Punchard sold the land to appellees for $600; that appellant lent them the $600 to pay for the land, but instead of putting the money in their hands, he put it directly in Punchard's hands, and, as security for the repayment of the purchase money, took the conveyance to himself. Suppose appellant had delivered the $600 to appellee as a loan to pay for the land and in turn they had delivered

it to Punchard for that purpose. Undoubtedly, under the law, the deed would be a mere mortgage to secure the repayment of the money. We are unable to see any substantial difference between such a transaction and the one here involved. Here, appellant said in effect to appellees: 'I will lend you the $600.00 to pay for the land, but will simply make the payment myself for you.' We think the governing principles would be the same.''

Tanous v. White, supra, is squarely in point. The effect of the agreement between appellee and appellants was that appellee would lend them the money to buy the land. Instead of putting the money in appellants' hands, he paid it direct to the Federal Land Bank and took title in himself to secure the purchase price. Title was held by appellee as trustee for the benefit of appellants until the purchase price was paid to appellee. He was fully paid the purchase price, plus his $25.00 charge and his recording expense. When appellee attempted to reserve all the minerals, he not only breached the trust, but it was an ineffective reservation; for appellee could not reserve what he did not have. Appellants were the beneficial owners of the land and the minerals.

Appellee cannot defeat the trust on the grounds that what he did was a friendly act to aid and assist appellants. ''Such considerations are the foundation of almost every trust, and the trustee should be held to account as nearly as possible in the same spirit in which he originally contracted.'' Suggins v. Heard, 31 Miss. 426.

The reading of the deed to appellants did not operate to divest appellants of their beneficial ownership of the minerals.

The case is reversed and judgment rendered here for appellants for all the minerals acquired by appellee from the Federal Land Bank, and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

*Roberds, P.J.,* and *Kyle, Arrington,* and *Ethridge, JJ.,* concur.

ON MOTION TO REVIVE

McGEHEE, C. J.

 A final decree was entered by the chancellor in this cause on March 8, 1954. The appeal bond was filed on July 29, 1954, and the record was filed in this Court on March 29, 1955. On November 4, 1955, a suggestion of death and motion to revive was filed by the heirs of the appellant, Paul Putman and Ira Putman. In their motion the movants averred that both Paul Putman and Ira Putman had died intestate since the rendition of the final decree in the lower court, and that appellant, Paul Putman, left as his sole heirs at law, Sara Jane Putman, his wife, Lentee Putman Brown, Carrie Johnson, Bessie Johnson, Annie Gayten, Oralee Franklin, Alice Mae Blackmon and Clementine Hudson; and that the appellant, Ira Putman, left as his sole and only heirs at law Doshia Putman, Ralph Putman and June Putman; and the movants ask that the cause be revived in their names as heirs of the appellants. The motion has been filed by the attorneys for all of the above mentioned heirs, and in their motion enter their appearances in this cause for all legal intents and purposes. That motion will be sustained and an order of revival will be entered substituting the above named heirs at law as appellants.

On November 4, 1955, a suggestion of death of J. E. Cowart, the appellee, and a motion to revive in the name of his heirs at law as appellees, in the place of J. E. Cowart, deceased, was filed by the attorneys for Paul Putman and Ira Putman; and on December 20, 1955, an additional suggestion of the death of the appellee J. E. Cowart, and motion to revive, as to him, in the name of Mrs. Velma Cowart, administratrix of his estate, was filed by the attorneys for the appellants, Paul Putman and Ira Putman. In each of these motions it was alleged

110

that the appellee, J. E. Coward, had died intestate on February 13, 1954. These motions were filed in the name of the appellants, Paul Putman and Ira Putman, by their attorneys of record. According to the recitals of the companion motion filed by the heirs of Paul Putman and Ira Putman for a revivor as to them, both of the appellants were dead at the time the motions were filed in their name for a revivor as to the heirs at law and the administratrix of J. E. Cowart, deceased, and for that reason those motions will be overruled, without prejudice to the right of the heirs at law of Paul Putman and Ira Putman to file such motions as they may deem proper to bring in the representatives of the appellee J. E. Cowart, after an order has been entered reviving the cause in the name of the heirs at law of the appellants. It is so ordered.

The first motion to revive is sustained; and the other motions are overruled without prejudice to the heirs at law of the appellants.

All justices concur, except *Kyle, J.,* who took no part.