# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00795-SCT

*WILLIAM WALLACE ALLRED*

*v.*

*WILEY FAIRCHILD, FAIRCHILD-WINDHAM EXPLORATION COMPANY, A PARTNERSHIP, JOHN M. FAIRCHILD, MICHAEL B. MOORE, MARK A. FAIRCHILD, AS THE TRUSTEES OF THE MARIE I. FAIRCHILD LIFE INSURANCE TRUST AND THE MARIE I. FAIRCHILD LIFE INSURANCE TRUST*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/1999 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OTIS JOHNSON, JR. |
| | KEITH R. RAULSTON |
| ATTORNEYS FOR APPELLEES: | JERRY L. MILLS |
| | CAROLYN BUTTLES MILLS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 5/31/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/21/2001 |

### BEFORE BANKS, P.J., COBB AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. In December 1990, William Wallace Allred filed suit in Covington County Chancery Court seeking to recover damages and other relief stemming from a multi-million dollar oil and gas transaction in 1974. In his complaint, Allred alleged that Wiley Fairchild and he entered into an oral contract whereby Allred was to receive a 10% interest in certain oil and gas leases "after payout" for helping arrange the agreement between Fairchild and Ledrew Windham for the purchase of those oil, gas and mineral leases. Allred further alleged that Fairchild owed him a commission for services rendered in connection with the sale and had made fraudulent representations concerning the status of the transaction in an effort to hide the true "payout" date. This, Allred claims, is the cause of the 16-year delay between the closing and filing suit.

¶2. After eight years of discovery, motions, hearings, and a counterclaim, Chancellor Percy L. Lynchard, Jr. ruled in favor of Fairchild. In his opinion, Chancellor Lynchard held that while Allred had rendered a valuable service worthy of compensation and there was evidence of an agreement between the two parties, the statute of limitations and the statute of frauds barred Allred's claims for recovery. Judgment was entered dismissing Allred's claims, as well as Fairchild's counterclaim. Allred now appeals that order and opinion contending that the chancellor erred by not imposing a constructive trust for his benefit and in applying the statute of frauds and statutes of limitations to his claims. According to Allred, the chancellor improperly applied the law and did not adequately consider relevant facts (i.e. Fairchild's fraudulence) that should have

been determinative.

## FACTS

¶3. These facts are based largely upon the findings of the chancellor and supported by the record. Since the suit itself covers 10 years and its factual basis spans thirty years, the facts have been restricted to those relevant to the issues now on appeal.

¶4. Over thirty years ago, William Allred and Wiley Fairchild began doing business with each other in the area of oil, gas, and minerals. During the course of their business relationship, Allred generally would secure mineral or other interests, and Fairchild would finance the ventures. As compensation for his efforts, Allred usually was paid either by commission or by a conveyance of a percentage of the newly acquired mineral interests. These transactions were mostly oral arrangements with no written contract of the agreement. Sometimes, Allred's compensation was not settled until long after the transaction had been completed.

¶5. During the early 1970s, Allred twice secured options for the purchase of the Windham's vast oil, gas, and mineral interests. After extensive research in determining the exact extent of the Windham properties, Allred approached Fairchild concerning the possibility of financing the project, as had been done with several other transactions in the past. Upon Fairchild's assent, Allred successfully negotiated a deal whereby Fairchild purchased all of the Windham oil, gas, and mineral interests located throughout the Southeast. The purchase of the Windham properties was finally closed on February 1, 1974. As for Allred's compensation, he and Fairchild agreed that a 10% interest in the Windham properties would be conveyed to Allred "after payout." In his final order, the chancellor held that payout "is a term commonly used in the oil, gas, and mineral business which refers to a point in time in which the acquisition costs of a mineral interest are paid, and with the exception of some overhead, the income derived from that interest is profits." Unfortunately, there was never any written documentation of this agreement.

¶6. Over the course of a few years, Allred inquired as to the status of the Windham properties and thus, his "commission" of 10% interest. According to Allred, Fairchild consistently and repeatedly reported that payout had not yet occurred. In fact, at trial an expert for Allred concluded that payout actually would have occurred no later than July 1981. After having received no documentation despite repeated requests and suspecting Fairchild of misrepresenting the facts (the parties had a falling out in the late 1970s or early 1980s), Allred finally brought suit in 1990.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN NOT IMPOSING A CONSTRUCTIVE TRUST FOR THE BENEFIT OF ALLRED.

¶7. Before we can determine whether the chancellor erred, we must first determine what is necessary to justify the imposition of a constructive trust.

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy.

*Sojourner v. Sojourner*, 247 Miss. 342, 153 So. 2d 803, 807 (1963) (citing 54 Am. Jur., *Trusts*, § 218). Essentially, a constructive trust is an operation of equity. When one party holds title and benefits from land that he/she should not rightfully possess, a constructive trust is imposed for the benefit of another party who is rightfully entitled to a part or the whole. *Sojourner*, 153 So.2d at 808-9 (citing **Russell v. Douglas**, 243 Miss. 497, 138 So. 2d 730 (1962)). The determination of the existence of a constructive trust is a matter of law and thus, subject to de novo review. *[McNeil v. Hester](McNeil v. Hester)*, 753 So. 2d 1057, 1063 (Miss. 2000). There is no question that Fairchild possesses the Windham properties. We need only determine whether Allred is due an interest in those properties.

¶8. In his original motion as well as in appeal briefs, Allred cites to an extensive list of alleged discovery violations in support of his assertion that Fairchild committed fraud. Allred's contention is that Fairchild purposefully lied, withheld evidence, and did everything possible to coverup the fact that he owed Allred a percentage of the Windham properties. This fraud has allowed Fairchild to benefit from the 10% interest due Allred per their oral agreement. As such, Fairchild should not be allowed to benefit from his wrongdoing as a matter of law.

¶9. In addition, the evidence indicates that Allred and Fairchild shared a special relationship based upon trust and mutual respect. "While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices. . .." *Sojourner*, 153 So. 2d at 807. In harmony with the equitable purpose of constructive trusts, we are careful not to apply too narrow a definition of confidential relationship. "An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one." *Id.* at 808. Allred's and Fairchild's long and informal business relationship is a clear indication that a confidential relationship existed. After all, the two did business for over 20 years based on little more than a handshake. It was this confidential relationship that allowed Fairchild to conceal the truth concerning payout for so long.

¶10. Finally, on multiple occasions, while denying the very existence of an oral agreement, Fairchild stated that he never intended to give Allred any interest in the Windham properties. The lack of any intention to fulfill an agreement is strong evidence that a constructive trust would be appropriate. "[A] constructive trust will be raised where at the time the promise is made the grantee does not intend to perform it. . .." *Id.* Although these last two elements are not technically necessary to establish a constructive trust, they strongly weigh in favor of creating one.

¶11. The present situation is tailor-made for the imposition of a constructive trust. Fairchild owns and profits off the Windham properties because he fraudulently hid the date of payout from Allred with whom he shared a confidential relationship. A constructive trust is a fitting remedy to right such unjust enrichment. *Id.* at 807. The chancellor erred in not imposing a constructive trust for Allred's benefit. Therefore, we reverse the chancellor's order and remand the case for determination of the value of the trust.

## II. WHETHER THE TRIAL COURT ERRED IN APPLYING THE STATUTE OF FRAUDS TO A "COMMISSION" PAYMENT SITUATION.

¶12. Whether the chancellor erred in applying the statute of frauds hinges upon whether the present situation classifies as a commission or an interest in land. There are certain basic rules concerning the statute of frauds that are fundamental to the determination of this issue. First, oral contracts are generally as

enforceable as any other form. ***Putt v. City of Corinth***, 579 So. 2d 534, 538 (Miss. 1991). Since Fairchild failed to cross-appeal upon the chancellor's finding that a valid oral contract existed, the fact that the contract was oral alone does not sound the death knell for Allred's case. ***[Steinwinder v. Aetna Cas. & Sur. Co.](#)***, 742 So. 2d 1150, 1151 (Miss. 1999). However, the statute of frauds does require that all contracts involving the sale of land be in writing. Miss. Code Ann. § 15-3-1 (1995). Furthermore, conveyances concerning mineral interests have always been held to fall within the sale of land requirement under Miss. Code Ann. § 15-3-1. *See **Gulf Ref. Co. v. Travis***, 201 Miss. 336, 30 So. 2d 398 (1947). In yet another twist, there exists case law stating that brokerage commissions (such as real estate brokers' fees) are not subject to the statute of frauds. ***Jefcoat v. Singer Housing Co.***, 619 F.2d 539 (5th Cir. 1980); ***Barney & Hines v. Jackson***, 108 Miss. 169, 66 So. 426 (1914). Therefore, the real question is whether the agreement between Allred and Fairchild should be classified as involving the sale of land or as a brokerage commission.

¶13. Allred supports a commission classification based mainly upon the idea that the present agreement does not actually concern Fairchild selling him an interest in land and that the agreement could have been satisfied with cash if Fairchild had sold the property for a profit immediately after acquiring it. As for the first argument, "the Statute of Frauds has reference to a contract for the sale of land, and not to a contract in which one party acquires title to particular lands with the intent to convey, subsequently, part of the lands to the other party." ***Evans v. Green***, 23 Miss. 294, 295 (1852); *see also **Shepherd v. Johnson***, 201 Miss. 99, 28 So. 2d 661 (1947); ***Scoggins v. Heard***, 31 Miss. 426 (1856). In the present situation, the Fairchild-Windham transaction was in writing, and Allred and Fairchild agreed that compensation would occur later, "after payout." These cases indicate that Allred's compensation is exactly the type to be classified as a commission. Second, Allred argues that the chancellor misinterpreted the agreement to mean that Allred received an interest in the property as of the moment of closing. This is a misunderstanding of the specific language involved in oil and gas transactions. The chancellor correctly defined payout as it is understood in the industry; yet, he neglected to apply that definition to the facts of the case. An interest in mineral or other leases after payout means that interest does not accrue until the buyer has fully recouped the costs of securing those interests. In other words, Allred essentially had an interest in the property once it became profitable. Therefore, if Fairchild had sold the property for a profit immediately upon closing, Allred would have been entitled to 10% of the profits. However, if the Windham properties were sold at a loss, Allred would receive nothing. Allred also points out that Fairchild termed the compensation a "commission" in a February 1974 memo. The crux of Allred's argument is that since it is conceivable that he could have been paid in cash for his services, his agreement with Fairchild was not for the sale of land.

¶14. Whereas Allred bases the commission theory on the argument that the present situation does not deal with the sale of land, Fairchild looks to the purpose for the statute of frauds as justification for pulling the agreement within its requirements.

> The principal purpose of the Statute of Frauds. . .is to require the contracting parties to reduce to writing the specific terms of their contract, especially an agreement affecting lands for more than one year, and thus to avoid dependence on the imperfect memory of the contracting parties, after the passage of time, as to what they actually agreed to some time in the past.

***Sharpsburg Farms, Inc. v. Williams***, 363 So. 2d 1350, 1354 (Miss. 1978). Fairchild points to the long span of time between contract and suit as well as the controversy and inconsistencies over what was really agreed upon as indicators that this situation is precisely what the Miss. Code Ann. § 15-3-1 meant to

alleviate. Furthermore, the language of the complaint states that compensation was "10% interest in the Windham properties."

¶15. To counter Fairchild's theory and in further support of the inapplicability of the statute of frauds, Allred asserts that the agreement essentially created a constructive trust under the control of Fairchild for Allred's benefit. Under *Sample v. Romine*, 193 Miss. 706, 9 So. 2d 643 (1942), constructive trusts are not subject to the statute of frauds. Since it has already been determined that a constructive trust was indeed created, the statute of frauds should not have been applied.

### III. WHETHER THE TRIAL COURT ERRONEOUSLY APPLIED THE STATUTE OF LIMITATIONS TO ALLRED'S CLAIMS.

¶16. In order to properly analyze a statute of limitations question, an understanding of the chronology of events and the limitations in question is necessary. Allred and Fairchild enter into the agreement in December 1973; the sale of the Windham properties is closed on February 1, 1974; and Allred files suit on December 19, 1990. In other words, a total of 17 years passed between the oral contract and the filing of suit. The applicable statutes of limitations which might control are Miss. Code Ann. §§ 15-1-7, 15-1-9, 15-1-29, 15-1-39, & 15-1-49 (1995). Section 15-1-7 requires suits involving recovery of land to be brought within 10 years of "right to make entry." Section 15-1-9 is also a 10-year statute of limitations for actions "claiming land in equity." Section 15-1-29 establishes a 3 year statute of limitations upon actions on unwritten accounts or contracts. Section 15-1-39 imposes a 10-year limit on actions seeking or concerning trusts, and § 15-1-49 is a catchall provision establishing a three-year deadline on all matters without specified limitations. Miss. Code Ann. §§ 15-1-7, 15-1-9, 15-1-29, 15-1-39, 15-1-49 (1995).

¶17. Although 17 years is obviously not within any of these limits, Allred argues that the statute of limitations did not begin to run until he could enforce his rights. *See Burwell v. Planters Lumber Co.*, 220 Miss. 79, 70 So. 2d 71 (1954). Since there is undisputed testimony that payout occurred sometime in July 1981, Allred contends this date is the true time of accrual for statute of limitations concerns. *See Southern Wholesalers, Inc. v. Stennis Drug Co.*, 214 Miss. 461, 59 So. 2d 78, 79 (1952). Therefore, the action would not be barred by §§ 15-1-7, 15-1-9, and 15-1-39. Furthermore, Fairchild made numerous false representations and swore under oath to them, including: denying the existence of an oral contract, until presented with evidence of one; denying the existence of any documented proof of a contract when P-67 (a February 1974 memo) evidenced the existence of a contract; sworn testimony that payout records were never kept when, in fact, his long-time secretary testified that they were; and failure to turn over many highly relevant documents, even after compelled to do so. This litany of violations clearly justifies any delay in filing. As this Court has repeatedly held, fraudulent concealment of the truth tolls all statutes of limitations. *Van Zandt v. Van Zandt*, 227 Miss. 528, 539, 86 So. 2d 466, 470 (1956). There is also statutory authority for this position: "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." Miss. Code Ann. § 15-1-67 (1995). Under this rule, accrual did not begin until the late 1980s when Allred discovered that payout had already occurred. Thus, the suit was filed well within all of the applicable statutes of limitation.

¶18. Allred testified that he asked about the payout status of the properties several times and was consistently lied to. Since accrual of his rights did not occur until 1981 and Fairchild fraudulently concealed

the truth, the statutes of limitations do not bar Allred's various claims.

## CONCLUSION

¶19. Although several other issues were raised on appeal, the imposition of a constructive trust is determinative; therefore, we need not address the other considerations. Allred and Fairchild shared a confidential relationship. Fairchild abused that confidence and retained the interest that rightfully belonged to Allred. This Court refuses to allow Fairchild to now benefit from that fraud. Therefore, the chancellor erred in not imposing a constructive trust for the benefit of Allred. Thus, we reverse and remand for further proceedings in accord with this opinion.

¶20. **REVERSED AND REMANDED.**

**BANKS, P.J., SMITH, MILLS, COBB AND EASLEY, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. PITTMAN, C.J., AND WALLER, J., NOT PARTICIPATING.**